**YOUNGSTOWN STEEL ERECTING CO., Inc., An Ohio Corporation, Plaintiff,**

v.

**MacDONALD ENGINEERING CO., Defendant.**

Civ. A. 32540.

United States District Court
N. D. Ohio, E. D.
Sept. 17, 1957.

338

Thomas D. McDonald, Cleveland, Ohio, Martin S. Goldberg, Youngstown, Ohio, for plaintiff.

John R. Baskin, Cleveland, Ohio, Wm. H. Noble, Chicago, Ill., for defendant.

WEICK, District Judge.

This action originated in the Common Pleas Court of Cuyahoga County and was removed to this Court on the ground of diversity of citizenship.

The complaint sets forth a cause of action for damages for breach of contract.

The case was tried by the Court without a jury.

The defendant asserted two defenses, viz., (a) that there was no contract and (b) plaintiff suffered no damage.

Defendant was a Delaware corporation engaged in the designing and erecting of various types of structures. It was the general contractor under a contract with Bessemer Limestone & Cement Company for the design and construction of nine cement storage silos at Bessemer, Pennsylvania. The contract provided that defendant was to be paid the actual cost of construction plus a fixed fee.

Plaintiff was an Ohio corporation engaged in steel construction work with its principal place of business in Youngstown, Ohio. It had previous experience in the placing of steel reinforcing rods in concrete.

Plaintiff learned of the Bessemer job from Dodge construction reports to which it was a subscriber. It was interested in bidding on the subcontract for placing reinforcing steel rods in concrete. On or about July 1, 1954, plaintiff's chief officers George Townsend and Albert De Perro called on defendant at the site of the construction work in Bessemer, Pennsylvania. They conferred with James W. MacDonald, President of the defendant company and Binar Bergman, its field superintendent.

After discussing the job and the experience of plaintiff's chief officers, Mr. MacDonald furnished to Messrs. Townsend and De Perro the plans and specifications for their examination so that plaintiff might submit a bid for the

placing of the steel reinforcing rods. The work to be performed under the subcontract was principally labor. The material was to be furnished by defendant.

Plaintiff's officers examined the plans and specifications and on July 6, 1955 mailed to defendant a written proposal for a subcontract "to place all the rods connected with Bessemer Lime Stone Co. [job] including the unloading. For the sum of $55.00 per ton. The Gen. Contractor to furnish all rods, wire, and chairs, also all other accessories."

Defendant answered the proposal by letter, under date of July 8, 1955, as follows:

"We have your proposal for reinforcing steel on the Bessemer Limestone and Cement Company job covering the reinforcing in the silos. It is understood that we will furnish you the use of our hoist but you will operate it. We will also let you use our crane when available manned with an engineer and oiler but you will furnish all ground crews. In furnishing the rods, wire and chairs it is not contemplated that we will furnish the supports for the foundation slab steel. Whatever you want to support this steel you will furnish. We will furnish all other chairs and supports.

"Please advise us if this is your understanding."

Plaintiff replied thereto on July 10, 1955 as follows:

"We accept all terms stated in your letter of July 8, 1955, covering the Bessemer Limestone & Cement Co. job. Bessemer, Pa. Thank you for your business."

This letter was sent by registered mail and was received by defendant.

The above constituted the entire correspondence between the parties.

After receipt of the letter of July 10, 1955, and without notice to plaintiff, defendant proceeded to and did award the subcontract for placing the rods to Bruce Campbell Construction Company of Youngstown.

Plaintiff claims that the writings constituted a binding contract and that defendant breached it by awarding the subcontract to Bruce Campbell Construction Company and that it lost profits as a result thereof for which it claimed damages in the amount of $19,798.33.

■■ It is elementary that in order to constitute a binding contract there must have been a manifestation of assent by the parties thereto. Restatement of the Law of Contracts § 19. There must have been a definite offer and an unequivocal acceptance of it. Restatement of the Law of Contracts § 32, § 58; 1 Williston on Contracts § 37, § 72.

■ All of the correspondence must be considered in determining whether a contract existed. Zehr v. Wardall, 6 Cir., 134 F.2d 805. Also the surrounding facts and circumstances should be taken into account for whatever light they might shed on the intention of the parties.

Plaintiff's proposal of July 6, 1955 did constitute an offer. It was sufficiently definite so that an acceptance would have ripened into a binding contract.

■ Defendant's letter of July 8, 1955 was not an acceptance of plaintiff's offer, but was a counter offer. Restatement of the Law of Contracts § 38, § 60; 1 Williston on Contracts § 77. It acknowledged receipt of plaintiff's proposal and then stated "It is understood" that defendant would furnish its hoist, but plaintiff was to operate it. Permission was granted to plaintiff to use defendant's crane together with the engineer and oiler when available, but plaintiff was to furnish all ground crews. Defendant further stipulated that in furnishing rods, wires and chairs it was not contemplated that defendant would furnish the supports for the foundation slab steel and that plaintiff would furnish whatever it wanted to support the steel. Defendant agreed to furnish other chairs and supports.

Surely, defendant would not have enumerated all these items as constituting its understanding of the work which was to be performed if it was not otherwise accepting plaintiff's proposal. While its letter enlarged the work to be performed, no question was raised about the contract price. Since defendant's letter imposed additional terms, it was necessary that the counter offer be accepted before any contract would result. Defendant's letter called for a reply as to whether this was plaintiff's understanding.

Plaintiff promptly accepted the counter offer by its letter of July 10 and thanked defendant for the business.

If these letters did not constitute an agreement, as defendant now contends, defendant had ample opportunity to respond to plaintiff's letter of July 10, and point out plaintiff's alleged error in treating defendant's letter of July 8 as constituting a counter offer. Defendant did not so respond, but remained silent and led plaintiff to believe that it had a contract.

Plaintiff did not learn otherwise until it visited the site of the job in order to find out when to start the work. It finally discovered that defendant had, without notice, awarded the subcontract to Bruce Campbell Construction Co.

Mr. MacDonald testified that the letter of July 10 arrived during his absence and that one of his subordinates put it in the file and he did not see it.

Mr. MacDonald further testified that when he received plaintiff's letter of July 8, he concluded that the proposal was so low that plaintiff did not know what it was doing and he instructed his subordinates to award the subcontract to Bruce Campbell.

It is difficult to understand why defendant wrote the letter of July 8 if it had already determined to award the contract to another person.

Mr. MacDonald also explained that silo design and construction was a specialty with which his company was thoroughly skilled and he thought plaintiff was not sufficiently familiar with this type of operation to properly perform the subcontract.

It must be remembered that plaintiff was not called upon for design of the silo, but merely for labor. Defendant did not call upon Bruce Campbell Construction Company for design, but only for labor which was performed under the supervision of defendant's foremen. Ordinary steelworkers were used, most of whom belonged to and were furnished by the steelworkers' union. If plaintiff had been awarded the subcontract, it would undoubtedly have used some of the same steelworkers.

In other words, the labor which was furnished by Bruce Campbell Construction Company could just as well have been performed by plaintiff.

The fact that defendant customarily used a printed form of subcontract with more detailed provisions has little bearing on the issues here. Plaintiff did not have knowledge of defendant's custom and there is nothing in the correspondence to even suggest a requirement as to a formal written contract.

The parties here entered into a binding contract. Defendant breached the contract by awarding the work to another contractor.

The issue of damages was sharply in dispute.

Plaintiff's testimony was to the effect that it could have performed the work required by the contract at a cost of $21,451.67 and that it lost profits amounting to $19,798.33 because of defendant's breach of contract.

Plaintiff's loss of profits was figured on the basis of 750 tons of reinforcing rods which it had been advised by defendant would be required.

The fact is that only 642 tons of rods were actually used on the job.

Defendant's testimony was to the effect that in figuring the cost of placing the rods for its bid on the general contract, its estimate was $70 a ton or $15 a ton higher than plaintiff's proposal and that actual cost was $71.30 per ton or a total of $45,779.87, and that it had pre-

viously performed similar work at comparable labor costs.

Defendant's subcontract with Bruce Campbell ·Construction Co. was on the basis of cost plus 10%. All Campbell did was to furnish his employees to defendant. Actually some of the workingmen were furnished by the steelworkers' union. The supervisory employees were furnished by defendant.

Campbell's original time records were not produced by defendant, but it did produce Campbell's reports to it.

In view of defendant's original estimate of $70 a ton, it is not understandable why the job was not given to plaintiff for $55 a ton unless defendant was somewhat concerned with the welfare of plaintiff and desired to prevent plaintiff from suffering what it believed would be a substantial loss.

The Court does not believe that plaintiff would have lost money on the labor contract for $55 a ton. Nor is it believed that plaintiff's profits would have been as large as claimed.

Townsend and De Perro are big, husky, skilled steelworkers. They would have worked on the job. These men could have performed much more work than two ordinary steelworkers furnished by the steelworkers' union. It would have been to their interest to do so with a fixed price contract. It is also probable that plaintiff's small organization could have gotten more work out of the men and used less men than were actually used on the cost plus contract. Plaintiff's labor cost would in all probability have been substantially less than the amount charged by Bruce Campbell Construction Co.

The Court finds that the work required under the contract would have cost plaintiff $30,000 to perform and that it would have been entitled to receive $35,310 on the contract and it, therefore, has been damaged in the amount of $5,310.

This memorandum is adopted as findings of fact and conclusions of law. Judgment may be entered in favor of plaintiff for $5,310.