**Jody DERAMUS, Individually and as Administratrix of the Estate of Frank Deramus, Plaintiffs–Appellants,**

v.

**JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 95–60675.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1996.

Kenneth Eward Labowitz, Young, Goldman & Van Beek, Alexandria, VA, Bobby L. Dallas, Scanlon, Sessums, Parker & Dallas, Jackson, MS, for plaintiffs-appellants.

Dudley Collier Graham, Jr., Eugene Randolph Naylor, Shell, Buford, Bufkin, Callicutt & Perry, Jackson, MS, for defendant-appellee.

Before KING, SMITH and WIENER, Circuit Judges.

PER CURIAM:

The judgment of the district court is affirmed on the basis of the district court's Memorandum Opinion and Order attached hereto.

AFFIRMED.

ATTACHMENT

IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF MISSISSIPPI JACKSON DIVISION

Jane Doe, Individually and as Administratrix of the Estate of John Doe, Plaintiff

v.

Jackson National Life Insurance Company, Defendant

Civil Action No. 3:92–cv–225WS

*MEMORANDUM OPINION AND ORDER*

WINGATE, District Judge.

Both the plaintiff and defendant herein contend that under the undisputed facts each is entitled to a judgment against the other. Defendant Jackson National Life Insurance (hereinafter "JNL") has submitted alternative motions under Rules 12(b)(6)[1] and

---

1. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:

**(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or

56(b),[2] Federal Rules of Civil Procedure, respectively, asking this court to dismiss plaintiff's action for failure to state a claim, or for summary judgment. Plaintiff Jane Doe,[3] individually and as administratrix of the Estate of John Doe (hereinafter "plaintiff" or "Doe") opposes defendant's motion, while submitting her own motion under Rule 56(a),[4] Federal Rules of Civil Procedure, asking this court to hold that under the undisputed facts defendant is liable to plaintiff. While the parties champion their respective positions and sharply disagree over the proper outcome of these motions, the parties are in accord over the identity of the key question and factual underpinnings of this litigation. In this diversity-of-citizenship action, our widowed plaintiff, Jane Doe, contends that JNL breached its duty to her, as well as to her deceased husband, John Doe, to inform them or their designated physician of John Doe's HIV-positive condition, when, during JNL's processing of John Doe's application for insurance which included a mandatory medical examination, JNL had discovered that circumstance, but did not reveal this information to the Does. Plaintiff has fired a volley of legal theories at the court which, according to plaintiff, shows that JNL owed a duty to plaintiff under Mississippi law and the factual circumstances peculiar to this case. Unfortunately for plaintiff, this court is persuaded that plaintiff's arguments miss the mark and that summary judgment, while appropriate, must be entered for the defendant. Making an *Erie*-guess, this court holds that under Mississippi law an insurer has no duty to inform an insurance applicant of the results of a medical examination where the insurer administers the examination only to determine the insurability of the applicant.

## PARTIES AND JURISDICTION

Jane Doe is an adult citizen of a State other than Michigan and serves as Administratrix of the Estate of John Doe, her husband, who died in the state of plaintiff's residence.

Defendant JNL is a life insurance company incorporated in Michigan with its headquarters in Lansing, Michigan. JNL is licensed to do business in Mississippi and has designated Cary Bufkin, Esq., of Jackson, Mississippi, as its agent for service of process.

This court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332,[5] diversity of citizenship. Since the court's jurisdictional grant is based upon diversity of citizenship, and since the factual backdrop of this dispute occurred in Mississippi, this court applies the substantive law of Mississippi to this dispute. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Boardman v. United Services Auto. Association*, 742 F.2d 847, 849 (5th Cir.1984);

third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
  (b) failure to state a claim upon which relief can be granted, . . .

2. Rule 56(b) of the Federal Rules of Civil Procedure provides:
  (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

3. *Doe v. Stegall*, 653 F.2d 180 (5th Cir.1981) (holding that after "a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings," a party may be permitted to proceed under a fictitious name).

4. Rule 56(a) of the Federal Rules of Civil Procedure provides:

  (a) For Claimant. A party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

5. Title 28 U.S.C. § 1332 provides in pertinent part:

  (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
  (1) citizens of different States; . . .

*Mitchell v. Craft*, 211 So.2d 509, 516 (Miss. 1968) (Mississippi choice of law rules direct its courts to apply a center of gravity test.).

## FACTS

In January, 1988, Mr. Doe had a life insurance policy with defendant which provided coverage of $500,000.00. Desiring additional life insurance, Mr. Doe applied for an increase of $300,000.00. Mrs. Doe simultaneously submitted an application for $250,-000.00 of life insurance to replace a policy she held with another insurance company.

As part of its application process, JNL required its applicants to submit to medical examinations at Examination Management Services, Inc., (EMS), a paramedical facility designated by JNL. These examinations, which included blood and urine tests, were vital to JNL's underwriting procedure. JNL reserved the right to refuse coverage if an applicant failed the medical examination. No one disputes that it was JNL's policy at the time to deny life insurance coverage to any individual who tested positive for the Human Immunodeficiency Virus (HIV), also known as the Acquired Immune Deficiency Syndrome (AIDS) virus. So, as part of its medical examination, JNL tested the blood of its applicants to detect any presence of antibodies or antigens to HIV.

On April 19, 1988, EMS, JNL's contract laboratory for blood work, ran a variety of tests on the Does' blood. Mr. Doe's blood tested positive for HIV. Mrs. Doe's tested negative. Thereafter, on April 21, 1988, the laboratory sent a telecopy of the Does' results to Dr. Lewis L. Stewart, Jr., JNL's medical director. Five days later, Ed Keller, the JNL underwriter in charge of the Does' applications, received a copy of the laboratory results. Keller then rejected Mr. Doe's application.

The notice of rejection mailed to Mr. Doe on April 26, 1988, did not tell him that he had been rejected because of the HIV test. Instead, by mistake, according to JNL, the notice sent to Mr. Doe stated that his appli-

cation had been rejected "because delivery of the policy was not accepted." But, this oversight was rectified two days later when Oscar Arinder, Mr. Doe's agent, learned that Mr. Doe's application had been rejected for medical reasons. Arinder then communicated this information to Mr. Doe who, in turn, asked Arinder to try to ascertain the specific results of his medical examination. Arinder telephoned JNL's regional office but was unable to obtain the information. Arinder then advised Mr. Doe to submit a written request to JNL for the information. On May 23 and July 5 of 1988, according to the plaintiff, Mr. Doe sent letters to JNL's Michigan office asking JNL to send all information concerning his medical condition to his physician, Dr. Barry L. White.[6] Mr. Doe's request was not honored.

In May of 1988, Mr. Doe was hospitalized at the Mississippi Baptist Medical Center in Jackson, Mississippi. During his hospital stay, Dr. Eric McVey, a specialist in infectious diseases, visited Mr. Doe and asked him if he had ever exposed himself to any HIV risk factors. Mr. Doe answered in the negative. No blood test was conducted at that time to detect the existence of HIV.

Eighteen months after undergoing the medical examination in connection with his life insurance application, Mr. Doe was hospitalized at Johns–Hopkins Medical Center ("Johns–Hopkins") in Baltimore, Maryland. While there, Mr. Doe was diagnosed as being HIV-positive. Immediately after Mr. Doe tested positive for the HIV virus, Mrs. Doe took an HIV test. Her test, as had the blood test administered by JNL, indicated that she was not HIV-positive. Mrs. Doe has since taken additional tests and all of them have shown that she does not have HIV.

By April of 1991, Mr. Doe's condition had deteriorated and he was again hospitalized at Johns–Hopkins. At that time, Mr. Doe once more wrote to JNL requesting that JNL submit the results of his 1988 medical examination to his physician, Dr. Donald M. Poretz of Annadale, Virginia. Nine days before Mr. Doe succumbed to AIDS, his doctor received a report from JNL. The report revealed

---

6. The defendant contests this assertion but, convinced the accuracy of the statement has no

bearing on these motions, does not challenge such under these motions.

that Mr. Doe had tested positive for HIV in 1988.

## DISCUSSION

The pivotal issue this court must resolve is whether under Mississippi law JNL had a duty to disclose to the Does the results of Mr. Doe's medical examination required by JNL as part of its insurance application process. Of course, the existence of a defendant's duty to act or not to act is a fundamental element of tort law. *Ward v. Hobart Manufacturing Company*, 450 F.2d 1176, 1181 (5th Cir.1971). A duty may arise specifically by mandate of statute, generally by operation of law under application of the basic rule of common, or frequently out of a contractual relationship. *George B. Gilmore Co. v. Garrett*, 582 So.2d 387, 391 (Miss.1991) citing *Pinnix v. Toomey*, 242 N.C. 358, 362, 87 S.E.2d 893, 897–898 (1955). Whether a defendant is under any duty, the violation of which would subject him to tort liability, is a legal question for the court to determine. *Stanley v. Morgan & Lindsey, Inc.*, 203 So.2d 473 (Miss.1967).

Inasmuch as this court's jurisdiction is grounded in diversity, the often-cited case of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), commands this court to employ the substantive law of Mississippi to determine the outcome of this dispute. The Mississippi courts, thus far, have not yet spoken definitively to the question of whether an insurer has a duty to disclose to insurance applicants the results of medical examinations which detect that an applicant is suffering from a life-threatening or debilitating disease. Since Mississippi has not directly addressed this issue, this court must make an *Erie*-guess as to how the Mississippi Supreme Court would rule. *See United Parcel Service, Inc. v. Weben Industries, Inc.*, 794 F.2d 1005, 1008 (5th Cir.1986) ("when making an *Erie*-guess in the absence of explicit guidance from the state courts, we must attempt to predict state law, not to create or modify it.").

Plaintiff, too, states that the Mississippi Supreme Court has not dealt with the specific issue before the court in this case. Never-

theless, says plaintiff, firmly embedded in Mississippi jurisprudence are accepted causes of action which would accommodate the theory of liability here being urged. Firstly, says plaintiff, JNL's duty arose out of a confidential relationship with her and her husband. Secondly, by requiring plaintiff's husband to take a medical examination and to disclose his confidential medical history, plaintiff says JNL undertook an act toward the Does that required JNL to act reasonably and with due care. Thirdly, says plaintiff, because she and her husband were JNL policyholders and because they completed insurance applications with JNL, JNL had a duty to conduct its affairs in good faith and fair dealing. Fourthly, says JNL, this court should impose a duty on JNL, says plaintiff, because it was foreseeable that harm would ensue from JNL's failure to inform plaintiff and her husband of Mr. Doe's HIV-positive status. The court will address each of these arguments.

## CONFIDENTIALITY OF THE RELATIONSHIP

According to plaintiff, the occasion which brought her and her husband together with JNL created a confidential relationship because JNL demanded access to confidential information and retained exclusive control of Mr. Doe's medical test results. This confidential relationship, argues plaintiff, was special and placed on JNL certain duties, one of which was to disclose the adverse results of medical examinations. Plaintiff relies heavily upon the case of *Lowery v. Guaranty Bank and Trust Co.*, 592 So.2d 79 (Miss.1991), as her authority, particularly the statement in *Lowery* that:

> A confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party *justifiably* imposes special trust and confidence in another, so that the first party *relaxes the care and vigilance that he would normally exercise* in entering into a transaction with a stranger.

*Id.* at 83. (Emphasis added). However, the above quote from *Lowery* does not embrace the facts *sub judice* to establish the existence of a confidential relationship. *Lowery* in-

volved a demonstrated course of conduct between the parties whereby the plaintiff was justified in relying on the defendant bank to protect a particular interest which was at stake. The defendant bank had a history of dealing with the plaintiff and her husband whereby the bank would place certain notes on hold until the husband could come in and take care of them. During this course of dealings, the plaintiff's credit life insurance was allowed to lapse and this resulted in the plaintiff not having the benefit of such credit life insurance upon the death of her husband. The Court held that because of the course of conduct between the parties the plaintiff and her husband had justifiably relied on the defendant bank to their detriment.

> The evidence indicates that because of the history of dealings with (defendant) and because the (defendant) bank placed the notes on hold until (plaintiff's husband) could come in and take care of them (the plaintiff and her husband) relied on that relationship and placed trust and confidence in (the bank) *to the point of being less vigilant about the coverage of their credit life insurance than they had been in the past.* If that were the case, the bank owed them the duty to notify them that the credit life insurance had lapsed and that it would not be in force while they waited on (plaintiff's husband) to return.

*Id.* at 85.

Thus, relative to the creation of a confidential relationship, *Lowery* holds that there must be something about the relationship between the parties which would justifiably create an expectation on the part of one party that the other was protecting the first party from the occurrence of a particular risk; and, moreover, such justifiable reliance must have necessarily caused the first party to be lulled into a false sense of security so that the first party did not protect his own interest as he might have ordinarily.

The factual urgings here simply fail to allow plaintiff here to step into the status of the *Lowery* plaintiff. Unlike the defendant bank in *Lowery,* JNL in no way mislead the Does into any inaction. JNL never promised the Does that JNL would warn them of any medical risks to their health, nor did JNL ever advise the Does that its silence as to the specific result of the medical examination should be construed as a positive medical finding. To the contrary, JNL here specifically advised the Does that JNL undertook simply to determine for itself whether it would accept the risk of providing insurance coverage to the Does. This set of circumstances hardly shows any justifiable reliance by the Does that JNL would do anything other than perform the limited function of a life insurance business, i.e., consider their applications for life insurance and possibly extend life insurance coverage upon any acceptance of such applications. Moreover, there is absolutely no proof that the Does in any way relaxed the care and vigilance that they would normally have exercised in looking out after their own health conditions in reliance upon any finding by JNL.

## DUTY TO PROTECT LIFE AND LIMB

Plaintiff says that by requiring her and her husband to submit to medical examinations, JNL undertook "the performance of an act" which required JNL to act reasonably and with due care, citing *Dr. Pepper Bottling Co. v. Bruner,* 245 Miss. 276, 148 So.2d 199 (1962). In *Dr. Pepper,* while delivering soft drinks to a local drug store, a Dr. Pepper employee pushed a cart loaded with soft drinks into the plaintiff's leg. *Id.,* 148 So.2d at 200. On appeal, Dr. Pepper contended that it was entitled to a preemptory instruction. *Id.* However, the Mississippi Supreme Court affirmed the lower court and gave the following discussion about duty:

> As a general rule, it is the natural inherent duty owed by one person to his fellowmen, in his intercourse with them, to protect life and limb against peril, when it is in his power to reasonably do so. The law imposes upon every person who undertakes the performance of an act which, it is apparent, if not done carefully, will be dangerous to other persons—the duty to exercise his senses and intelligence to avoid injury, and he may be held accountable at law for an injury to person or property which is directly attributable to a breach of such duty ... Stated broadly, one who undertakes to do an act or dis-

charge a duty by which conduct of others may be properly regulated and governed is under a duty to shape his conduct in such manner that those rightfully led to act on the faith of his performance shall not suffer loss or injury through his negligence.

*Dr. Pepper*, 148 So.2d at 201.

So, while it is true that JNL had a duty to conduct its affairs reasonably and with due care, in this case that duty did not require JNL to protect plaintiff and her husband from harm from any force(s) that JNL did not set into motion. *Dr. Pepper Bottling Co. v. Bruner*, then, has no coverage over the facts here.

Plaintiff also cites several cases in which physicians have been found negligent for acts they performed even though no physician-patient relationship existed, the principal case of which is *Meena v. Wilburn*, 603 So.2d 866 (Miss.1992) (holding that "a doctor may be held liable for negligence if the traditional elements—duty, breach of duty, causation, and injury—are evidenced, where such liability is not negated by the absence of a doctor-patient relationship."). *Meena*, however, is not applicable here.

In *Meena*, a physician negligently instructed his nurse to remove the staples from the wrong patient's leg. When the physician undertook the task to treat the patient, he commensurately undertook a duty to perform that task with care. *See George B. Gilmore Co. v. Garrett*, 582 So.2d 387, 391 (Miss.1991). As a result of the physician's negligence, the patient was injured.

The instant case is quite different. JNL is not a physician, but an insurance company. Additionally, there is no evidence here showing plaintiff to have been treated by a physician. Rather, plaintiff merely submitted blood samples that were later tested by a laboratory. This factual scenario hardly equates to that of *Meena*, which simply involved a physician, who, because of his special discipline, is under a special duty. Moreover, here there is no evidence that JNL acted or failed to act in such a way which facilitated Mr. Doe's contraction of and eventual death from A.I.D.S.

Plaintiff also urges this court to follow *Meinze v. Holmes*, 40 Ohio App.3d 143, 532 N.E.2d 170 (1987). In *Meinze*, the plaintiff argued that a disability insurer had a duty to inform the insured about significant medical information it had acquired by reason of examination of the insured person and his medical files. The *Meinze* Court held that the disability insurer fulfilled its duty when it delivered copies of its physicians' reports to plaintiff's attorney. *Id.*, 532 N.E.2d at 174.

Contrary to plaintiff's view, *Meinze* does not stand for the proposition that an insurer is under an absolute duty in all circumstances to disclose to the insured a newly discovered medical risk or danger unknown to the insured. In fact, the *Meinze* Court specifically stated that because the record was lacking, it was unable to determine "what sort of circumstances will create a duty to disclose, what is the extent of that duty, and what actions will fulfill it." *Id.*, 532 N.E.2d at 173. The *Meinze* Court stated instead that it was "unwilling to develop a comprehensive statement of the duty to disclose beyond the requirements of the appeal." *Id.* Accordingly, the Court found that the only question it needed to address was, in light of the mode of disclosure utilized, whether under the circumstances the duty of care was fulfilled by that disclosure. *Id.*, 532 N.E.2d at 173. Thus, *Meinze* stands only for the proposition that where the insurer discloses information, such disclosure must be done with due care.

A further distinguishing factor of *Meinze* is that there was a relationship between the insurer and insured. The plaintiff in *Meinze* had a disability policy with the insurer. Here, there was no relationship (i.e., contract) between the plaintiff and her husband and JNL as it relates to their 1988 applications. The Does merely completed applications for life insurance coverage. JNL accepted the applications for processing. JNL, however, did not accept Mr. Doe's offer to sell him a policy. As such, the *Meinze* relationship between the parties there is lacking here.

Additionally, plaintiff cites a litany of cases which plaintiff insist holds that an employer or prospective employer owes a duty to con-

vey the results of medical exams it requires an employee or prospective employee to take. *See Daly v. United States,* 946 F.2d 1467 (9th Cir.1991) (where employer was a hospital and pre-employment exam was conducted by hospital physician, court extended the physician's duty to disclose beyond the physician/patient relationship); *Green v. Walker,* 910 F.2d 291 (5th Cir.1990) (court held when individual is required, as condition of future or continued employment, to submit to medical examination, that examination creates a relationship between examining physician and examinee); *Wojcik v. Aluminum Co. of America,* 18 Misc.2d 740, 183 N.Y.S.2d 351, 356 (N.Y.1959) (court held complaint stated cause of action which alleged employer gratuitously provided medical examinations to its employees, had a policy of revealing any irregularities, discovered that plaintiff who relied upon the policy had a serious disease, but did not disclose same to him); *Dornak v. Lafayette General Hospital,* 399 So.2d 168, 170 (La.1981) (court held that hospital employer was obligated to disclose to plaintiff any dangerous condition realized at a pre-employment examination conducted by hospital physician); *Betesh v. United States,* 400 F.Supp. 238, 246 (D.D.C.1974) (Government breached its own policy of advising rejected examinees to seek medical attention. Furthermore, "having assumed to act, the Government physicians were under a duty to act carefully, not merely in the conduct of the examination but also subsequent communications to the examinee."); *Beadling v. Sirotta,* 41 N.J. 555, 197 A.2d 857 (1964) (court did not reach the issue of employer liability). These cases are not persuasive. Upon close scrutiny of each of these cases, it becomes apparent that plaintiff's interpretation of these cases is either erroneous or that the case is clearly distinguishable. These cases deal either with the extension of the duty of a physician hired by a hospital employer (*Daly v. United States,* 946 F.2d 1467 (9th Cir.1991); *Dornak v. Lafayette General Hospital,* 399 So.2d 168, 170 (La.1981)), with employers which violated their own documented disclosure policy (*Betesh v. United States,* 400 F.Supp. 238, 246 (D.D.C.1974)), *Wojcik v. Aluminum Co. of America,* 18

Misc.2d 740, 183 N.Y.S.2d 351 (N.Y.1959), or with circumstances where the courts did not even reach the issue of employer liability with regards to non-disclosure (*Green v. Walker,* 910 F.2d 291 (5th Cir.1990); *Beadling v. Sirotta,* 41 N.J. 555, 197 A.2d 857 (1964)). As earlier stated, the instant case does not involve the violation of a documented disclosure policy nor treatment by a physician.

Where a physician is directly involved, people have a right to expect a certain degree of care and disclosure on their health and health related matters regardless of whether a doctor/patient relationship exists. *See Meena v. Wilburn,* 603 So.2d 866 (Miss. 1992). Indeed, disclosure to, at least, the patient is essential to the treatment and retardation of diseases and other ailments. However, this court is not persuaded, nor does Mississippi law support such a conclusion, that an insurance company should bear the same burden of care as a physician, i.e. divulging the results of a medical examination. A physician and an insurance company, serve to different purposes in our society. A physician is sworn to protect and respect human life. An insurance company, on the other hand, by insuring those individuals it perceives as "insurable," is here to soften the blow of natural and artificial disasters, be it death, fire or flood. To hold insurance companies to the same standard as physicians would be to expect expertise on health related matters from an entity which hasn't the knowledge or the resources.

The Mississippi Supreme Court case of *Puckett v. Rufenacht, Bromagen, & Hertz, Inc.,* 587 So.2d 273 (Miss.1991), sheds some light on the instant issue, although it is not a case involving the duty to protect life and limb. Therein, the Mississippi Supreme Court stated:

> If a society is to be free, it must demand of every person who, completely on his own, makes a mistake that he has no legal right to shift from his shoulders onto another's the suffering it causes. In our modern society, en masse we are our brother's keepers; we pay taxes for schools, highways, public health and hundreds of other public programs. On an individual basis,

however, no man should be required by law to pay for what was solely and purely another man's mistake.

It may be morally reprehensible for one man to watch another open a window on the twentieth floor of a skyscraper, climb through it and jump out, when he could have easily reached out and stopped him. To impose a legal responsibility upon the bystander to stop him, however, is an entirely different matter.

*Puckett,* 587 So.2d at 278. In other words, where a party does not create or cause the peril, said party is under no obligation to prevent the consequences of the peril. Accordingly, plaintiff's reliance upon the rubric in *Dr. Pepper* for her "duty to protect life and limb" claim is misplaced. JNL did not infect Mr. Doe with H.I.V. This being so, JNL was under no obligation to inform Mr. Doe that he was so infected, even though this may have been the morally correct thing to do.[7]

### DUTY OF GOOD FAITH AND FAIR DEALING

Plaintiff says that JNL owed a duty to her and her husband because of its contractual relationship with them—the Does were JNL policyholders and they applied for insurance with JNL in 1988. Consequently, says plaintiff, JNL owed them a duty of good faith and fair dealing. *See Cenac v. Murry,* 609 So.2d 1257, 1272 (Miss.1992) (stating that every contract imposes upon each party a duty of good faith and fair dealing).

The duty of good faith and fair dealing, which applies to both the insurer and the insured "requires abstinence by all parties from commission of wrongful conduct which injures 'the right of [the another] to receive the benefits of the agreement.'" *Andrew Jackson Life Insurance Co., v. Williams,* 566 So.2d 1172 (Miss.1990) citing Shipstead & Thomas, Comparative and Reverse Bad Faith.

Any contractual relationship between Mr. Doe and JNL was based upon the life insurance policy already in existence at the time he applied for and was later denied additional coverage. There is no indication from the record that JNL did not fulfill its obligation to Mr. Doe under the first insurance policy. As for Mrs. Doe, although she and JNL had a contractual relationship via her own life insurance policy, there is no indication that the defendant, by not divulging Mr. Does condition to Mrs. Doe, interfered with Mrs. Doe's rights to receive the benefits of the agreement between Mrs. Doe and JNL.

### DUTY TO WARN OF FORESEEABLE HARM

Plaintiff says that this court should impose a duty on JNL in this case because it was foreseeable that harm would likely ensue from a given act or omission. Plaintiff points to *Foster v. Bass,* 575 So.2d 967 (Miss.1990), for support. In *Foster,* the father of an adopted child suffering from mental retardation caused by Phenylketonuria (PKU) brought an action against, *inter alia,* the private adoption agency, alleging that defendant was negligent in failing to test the child for PKU at the time of his birth and negligent in failing to provide proper medical information. *Foster,* 575 So.2d at 968. Pursuant to defendant's motion, the trial court granted summary judgment, concluding "that there [was] no evidence which would allow a reasonable jury to conclude that [the defendant] breached a duty proximately causing [the plaintiff's] injury. *Id.* at 969. On appeal, the Mississippi Supreme Court, also refused to impose a duty on Catholic Charities for failing to ensure that a child placed through its adoption agency had been tested for Phenylketonuria ("PKU"). *Id.* at 981.

On its way to its decision, the Mississippi Supreme Court conducted a foreseeability analysis, starting with the following observation:

For actionable negligence to exist, the defendant must owe the plaintiff a legal

---

7. Of course, this court is aware of at least one case (outside the State of Mississippi) where a plaintiff sued a medical provider for incorrectly advising her that she had AIDS, where over a two-year period she had altered her lifestyle and prepared for death. Although this point was not specifically mentioned by JNL, perhaps this fear of being wrong and having to face a possible lawsuit prompted it to refuse to make disclosure. But this is pure speculation on the court's part.

282

duty. We noted Mississippi's adoption of this universal principle in *Ward v. Hobart Mfg. Co.*

A duty does not exist, "[i]f the defendant could not reasonably foresee any injury as the result of his acts, or if his conduct was reasonable in the 'light of what he could anticipate'" ... The rationale behind this foreseeability requirement is that no one is expected to guard against events which are not reasonably to be anticipated or that are so unlikely that the risks would be commonly disregarded.

*Karpovs v. State,* 663 F.2d 640, 649 (5th Cir.1981) (citations omitted).

*Foster,* at p. 975.

Then, after detailing a number of factors which countered this foreseeability requirement, namely, the rarity of the disease, the lack of physical symptoms, the absence of medical doctors on the agency's staff, the agency's reliance on outside physicians and the adopting parents' responsibility to obtain certification from their own pediatrician that the adopted child was in good health, the Mississippi Supreme Court held as a matter of law that Catholic Charities reasonably could not have foreseen the injury from its failure to inform the doctors that the adopted child had not been tested for PKU.

The holding and analysis in *Foster* do not serve as any basis for liability here. *Foster* does not stand for the recognition of any duty owed by JNL to the plaintiff. The foreseeability of harm analysis undertaken by the Mississippi Supreme Court was simply one of the policy factors considered by the Court in determining whether a duty existed in *Foster*.[8] After balancing the relevant factors, the Mississippi Supreme Court stated that:

> There also is no evidence which supports a finding of foreseeability of harm to *Geof-*

*frey* as a consequence of a blank on Catholic Charities' medical information form, such that the form would be deemed the proximate cause of his damages.

*Foster,* at p. 983.

The *Foster* holding applies here against the plaintiff. There is no evidence here to show JNL's failure to disclose the results of its test proximately caused John Doe's damages. John Doe was stricken with the disease before he undertook application for additional insurance with JNL. Once JNL rejected his application on medical grounds, John Doe was on notice that JNL was of the opinion that he had some uninsurable medical ailment detected from tests on his urine or blood. It would have been a simple matter for John Doe to submit urine and blood samples to his own physician for further testing. JNL could reasonably have expected John Doe to follow this course. John Doe instead did not place his physician on notice of JNL's rejection and later even told his hospital physician that he had no reason to suspect he had AIDS, a statement which persuaded the hospital physician not to test for the disease. These facts simply fail to show any liability by JNL to plaintiff under any analysis conducted under *Foster*.

## CONCLUSION

Having explored the juridical theories advanced by plaintiff, this court finds that none of them under Mississippi law subjects defendant to liability here for failing to disclose the results of its test on plaintiff's blood. Accordingly, this court grants defendant's motion for summary judgment. The plaintiff's motion for partial summary judgment is denied. A separate judgment shall be entered in accordance with the local rules.

---

8. "The policy factors which must be considered in determining whether a duty exists have been judicially defined as follows: the foreseeability of harm, the degree or certainty of injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, costs, and prevalence of insurance for risk involved." *Foster,* 575 So.2d 967, 979 (Miss.1990) quoting *Richard P. v. Vista Del Mar Child Care Service,* 106 Cal.App.3d 860, 165 Cal.Rptr. 370 (1980).

SO ORDERED AND ADJUDGED, this the 29th day of September, 1995.