David E. EATON, Plaintiff,

v.

CONTINENTAL GENERAL
INSURANCE COMPANY,
et al., Defendants.

No. 3:99CV7541.

United States District Court,
N.D. Ohio,
Western Division.

April 26, 2001.

Joseph C. Benage, Walter M. Brown, Morrison & Hecker L.L.P., Kansas City, MO, John K Nelson, Cooper, Walinski & Cramer, Toledo, OH, for LabOne, Inc.

Marshall A. Bennett, Jr., Marshall & Melhorn, Toledo, OH, for Continental General Insurance Company.

Stefanie E. Berk, Thomas P. Dillon, Shumaker, Loop & Kendrick, Toledo, OH, for John Doe.

Kevin K. Gavin, The Western & Southern Life Insurance Co, Cincinnati, OH, for Western–Southern Life Insurance Company.

Richard B. McQuade, Toledo, OH, pro se.

Mark P. Prajsner, Helmick, Prajsner & Hoolahan, Toledo, OH, Vesper C. Williams, Toledo, OH, for David E. Eaton.

## ORDER

CARR, District Judge.

This is a diversity action arising under Ohio Revised Code § 3901.46(B)(1), in which plaintiff alleges that defendants breached a statutory duty when they failed to notify plaintiff that he tested positive for the HIV virus. Plaintiff also alleges negligence and breach of contract because of defendants' failure to notify him about the test results. Pending are defendants' motions for summary judgment (Docs. 71, 72, 77, and 78). For the following reasons, defendants' motions shall be granted

## BACKGROUND

On May 6, 1997, plaintiff, David Eaton, applied to Continental Insurance Company for disability insurance. (Doc. 57 at 2). The application was taken by Adam Balduff, an agent for Western and Southern Life Insurance Company. (*Id.*). Western and Southern and Continental had an agreement whereby agents of Western and Southern were permitted to solicit applications for Continental. (Doc. 73 at 1).

Mr. Balduff told plaintiff that Continental required him to take an HIV test as a condition for the insurance policy. (Doc. 57 at 2). Mr. Balduff also told plaintiff that someone would come from a "lab company" to give him a physical exam and take a blood sample. (Doc. 76 at 59).

On May 10, 1997, a paramedical examiner, K.C. Werhoff, came to plaintiff's residence to give him a physical examination and draw blood. (Doc. 57 at 2; Doc. 73 at 2; Doc. 76 at 66). Ms. Werhoff was an employee of Equifax/PMI (Doc. 77 at 3) (In August, 1997, the assets of Equifax/PMI were spun off to become Choice-Point Services, Inc. (Doc 77 at 2)). According to plaintiff, Ms. Werhoff told plaintiff that he would be informed if he tested positive. (Doc.76 at 76, 77). Additionally, plaintiff filled out a "Notice and Consent for Testing" form which advised plaintiff that 1) the test results would be reported by the laboratory to the insurer; and 2) if the results were positive, the insurer may contact plaintiff about them. (Doc. 71 at 4). Plaintiff also completed a form requesting to be notified of a positive HIV test result. (Doc. 73 at 4; Doc. 76 at 79).

Equifax/PMI sent the blood sample to LabOne for analysis. (Doc. 71 at 5). LabOne, a testing laboratory in Kansas, is authorized to conduct tests for Continental. (Id.). The test results revealed that plaintiff was HIV positive. (Id.). On May 16, 1997, LabOne sent the test results to Continental. (Id.) LabOne had no direct contact or relationship with plaintiff. (Id. at 6). LabOne also sent the results to the Kansas Department of Health on a no-name basis and the Kansas Department of Health sent the results to the Ohio Department of Health on a similar no-name basis. (Id.).

In the interim, Continental discovered that plaintiff already had disability insur-ance through his employer. (Doc. 73 at 5). Based on Continental's underwriting guidelines, the fact that plaintiff already had disability insurance precluded Continental from selling a disability policy to plaintiff. (Id.). On May 16, 1997, plaintiff's file was sent to word processing for preparation of a rejection letter. (Id. at 5, 6). Continental did not follow its customary practice of notifying persons about positive HIV tests because, by the time it received the report from LabOne, plaintiff's application and file had been closed. (Doc. 85 at 11).

In August, 1998, plaintiff's family doctor told him that he was HIV positive. (Doc. 57 at 3). In October, 1998, Continental received a letter from plaintiff's attorney, requesting that it provide plaintiff with the test results. (Doc. 73 at 6). Continental complied with the request and provided the report to plaintiff's attorney. (Id.).

Plaintiff filed suit alleging: 1) defendants were negligent in failing to notify plaintiff of his positive test results (specifically that defendants had a duty to notify plaintiff of the test results under O.R.C. § 3901.46(B)(1)); 2) defendants breached their contract with plaintiff when they failed to notify plaintiff of his test results; and 3) defendants intentionally and/or negligently inflicted emotional distress on plaintiff.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## ANALYSIS

Because none of the defendants has a duty to notify plaintiff about his test results under O.R.C. § 3901.46(B)(1), common law, or contract, defendants' motions for summary judgment shall be granted.

### I. Defendant Continental Insurance Company

█ Plaintiff's primary claim is that Continental had a statutory duty to notify plaintiff if he tested positive for HIV. Ohio Revised Code § 3901.46(B)(1) states that:

[a]n insurer that requests an applicant to take an HIV test shall obtain the applicant's written consent for the test and shall inform the applicant of the purpose of the test. *The consent shall include information about* the tests to be performed, the confidentiality of the results, *procedures for notifying the applicant of the results,* and a general interpretation of the results.

O.R.C. § 3901.46(B)(1) (Emphasis added).

█ Under Ohio law, a statute may be used as a basis for an action in negligence per se if it commands or prohibits the doing of a specific act, and there is a violation of such statute by one obligated to adhere to it. *Eisenhuth v. Moneyhon,* 161 Ohio St. 367, 374, 119 N.E.2d 440 (1954). The violation is negligence per se if a positive or definitive standard of care has been established whereby a jury may determine whether there has been a violation of the statute by finding a single issue of fact. *Id.*

Section 3901.46(B)(1) requires an insurer who wishes to conduct an HIV test to disclose this fact to its applicant, and to obtain the applicant's written consent to the HIV testing. The remainder of the section lists topics that the insurer's consent form needs to address. It neither commands the insurer to do anything, nor does it state what the consent form must say. Section 3901.46(B)(1) does not expressly require the insurer to notify the applicant about the results. Instead, it simply requires the insurer to provide information about the *procedures* for notifying the applicant about the results. Nowhere does the statute actually impose an express duty upon the insurer to notify the applicant of the results. Therefore, § 3901.46(B)(1) cannot properly be construed as providing a private cause of action for failure to notify an insurance applicant about a positive HIV test result.

Additionally, § 3901.46(B)(1) does not prescribe a specific notification procedure

to be followed by an insurer wishing to comply with the statute. There is, accordingly, no statutory duty or specific standard of care that can be used to measure the insurer's conduct. Section § 3901.46(B)(1) does not provide a basis for a claim of negligence per se.

■ Furthermore, Continental does not have a common law duty to notify plaintiff about positive test results. No Ohio court has imposed such a duty. The Fifth Circuit considered this issue and declined to recognize such a common law duty. *Deramus v. Jackson National Life Insurance Company*, 92 F.3d 274 (5th Cir.1996). The Court held that there is no relationship between an insurance company and an applicant giving rise to a duty to notify an applicant of positive HIV test results. The relationship between an insurance company and an applicant is commercial, not medical. *Meinze v. Holmes*, 40 Ohio App.3d 143, 147–48, 532 N.E.2d 170 (1987) (declining to adopt a "comprehensive statement of a duty to disclose" medical information obtained by examiners who were not physicians). Ohio has not adopted a common law duty requiring insurance companies to notify applicants of positive HIV test results.

■ Plaintiff's next claim is that Continental breached its contractual agreement with plaintiff when it failed to inform plaintiff of the positive test results. An Equifax/PMI paramedical examiner conducted plaintiff's insurance examination. Plaintiff claims that during the course of this examination, plaintiff claims that the paramedical examiner made statements to the effect that plaintiff would be informed if the HIV test results were positive. Assuming the statements were made, no such statement gives rise to a contractual obligation on the part of Continental.

The examiner did not have actual or apparent authority to bind Continental.

The declaration of Charles Real, Vice President for Continental, clearly establishes that the examiner had no actual authority to bind Continental to any form of contractual agreement. (Doc. 74 at 2).

■ Plaintiff claims that the examiner had apparent authority to bind Continental. To show apparent authority sufficient to bind Continental, plaintiff must show:

(1) [t]hat the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.

*Evans v. Ohio State University*, 112 Ohio App.3d 724, 744, 680 N.E.2d 161 (1996); *see also General Electric Co. v. Siempelkamp GmbH & Company*, 29 F.3d 1095 (6th Cir.1994). The existence of apparent authority cannot be determined by what the agent says or does; rather, it is determined by the conduct of the alleged principal. *Cascioli v. Central Mutual Insurance Company*, 4 Ohio St.3d 179, 448 N.E.2d 126 (1983); *see also Chesapeake & Ohio Ry. Co. v. Ringstaff*, 67 F.2d 482 (6th Cir.1933).

The record clearly establishes that plaintiff had no reason to expect that the paramedical examiner had apparent authority to bind Continental. Adam Balduff, the agent who took plaintiff's application, stated that a woman would come to plaintiff's house to give him a physical and draw blood. (Doc. 76 at 58). Mr. Balduff also told plaintiff that this woman was from a "lab company." Moreover, plaintiff stated that he did not pay attention to who the paramedical examiner's employer was. (*Id.* at 66). Hence, plaintiff did not know

for whom the examiner worked. Plaintiff has not shown that Continental held the paramedical examiner out to the public as having authority to enter into contractual agreements with people whom she examined.

Additionally, plaintiff has failed to offer evidence that Continental "knowingly permitted" the paramedical examiner to hold herself out as having authority to enter into contractual agreements with insurance applicants. The paramedical examiner never held herself out as having this authority (Even if she had done so, Continental was unaware of her doing so). Therefore, the paramedical examiner was not acting with either actual or apparent authority from Continental.

Plaintiff likewise fails to show that any contractual undertaking arose between him and Continental or the examiner about the test results. There is no evidence that plaintiff made an offer to apply for insurance in exchange for a promise to fairly process his application or to inform him of his HIV status. When plaintiff met with Mr. Balduff on May 6, 1997, Mr. Balduff filled out the application with plaintiff and took plaintiff's deposit check. (Doc. 66 at 57–58). Mr. Balduff told plaintiff of the required blood test, but plaintiff could not recall whether Mr. Balduff told him that the blood test was intended to check for HIV (*Id.* at 94). Plaintiff's only purpose in going through the application process was to get insurance (*Id.* at 101). Plaintiff also indicated that the examination by the paramedical examiner was simply a part of the application process. (*Id.* at 33). Even though plaintiff testified that the examiner told him he would be notified if the HIV test results were positive, he also testified that this statement was an incidental part of their conversation, not a contractual undertaking. Furthermore, the examiner's

comment appears to have been made after plaintiff's blood was drawn. (*Id.* at 66–67).

Plaintiff also signed a request for notification if the test results were positive. (*Id.* at 78–79). This document does not constitute a promise by Continental to notify plaintiff if the results are positive. Rather, it is simply a request by plaintiff that he be notified of a positive HIV test. In fact, plaintiff acknowledged that this document was nothing more than a *request* to be notified if the test results were positive (*Id.* at 79). Additionally, this document was not a Continental document. (Doc. 74 at 2, ¶ 9). Thus, it does not constitute an implied promise by Continental to notify plaintiff if the test results were positive. Furthermore, plaintiff did not know and was not told who would be notifying him if the results were positive. (Doc. 76 at 80,104).

To give rise to a contract, there must be a definite offer and an unequivocal acceptance. *Youngstown Steel Erecting Co. v. MacDonald Engineering Co.*, 154 F.Supp. 337 (N.D.Ohio 1957). An "offer" is defined as "a manifestation of willingness, so made as to justify another party in understanding that his assent to the bargain is invited and will conclude it." Restatement (Second) Contracts, § 24 (1979). Any statement by the paramedical examiner to the effect that plaintiff would be notified if the results were positive was not an "offer." Rather, it was a statement of what she expected the future course of conduct of Continental (a company with whom she had no contact) to be. Such expression of an expectation does not rise to the level of a contact offer.

The same analysis applies to the plaintiff's written request to be notified if the test results were positive. The language in the form contains no offer from Continental or any other person or company. Plaintiff acknowledged that this was a sim-

ple request from him that he be notified. (Doc. 76 at 78–79). Furthermore, even assuming that the paramedical examiner's statements and the form are promises, there is nothing in the record to indicate that plaintiff offered any consideration for them. Thus, Continental was not contractually obligated to notify plaintiff if he tested positive for HIV.

■ Finally, plaintiff asserts that Continental is liable for intentional and/or negligent infliction of emotional distress. Plaintiff claims that as a result of Continental's failure to notify him of his test results, he suffered emotional distress when he became aware of his HIV-positive test results. Plaintiff also claims to have suffered from emotional distress because he feared that he may have infected others.

■ Plaintiff's claim fails for two reasons. First, the alleged emotional distress resulted from a non-existent peril. Recovery is not permitted on a claim for infliction of emotional distress where the distress was caused by plaintiff's fear of a non-existent peril. The Ohio Supreme Court has held that Ohio recognizes a claim for negligent infliction of serious emotional distress only where there is a cognizance of real danger, not the apprehension of a non-existent physical peril. *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 652 N.E.2d 664 (1995). In this case, plaintiff claims injuries arising from his "knowledge that he may have infected others" with the HIV virus. (Doc. 57 at 4). However, plaintiff stated that he had no knowledge that he infected others. (Doc. 76 at 85). Thus, under *Heiner*, no recovery is permitted for emotional distress over a peril that has not occurred or over an apprehension that something might have happened.

Second, Continental's behavior must be extreme and outrageous. The Ohio Supreme Court has held that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 374–75, 453 N.E.2d 666 (1983) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether the claim is for intentional or negligent infliction of emotional distress, extreme and outrageous conduct is required. *Okocha v. Fehrenbacher*, 101 Ohio App.3d 309, 320, 655 N.E.2d 744 (1995); *Yackshaw v. John Carroll Univ. Bd. Of Trustees*, 89 Ohio App.3d 237, 244, 624 N.E.2d 225 (1993).

Continental's behavior was not extreme and outrageous. As discussed above, Continental had no duty to report positive test results to plaintiff. Moreover, Continental never knew about the test results because it had decided to deny plaintiff's application before it was aware of the results. This reasonably accounts for and explains Continental's failure to follow its customary practice of notifying persons of HIV test results.

## II. Defendant Western and Southern Life Insurance Company

Plaintiff's primary claim that Western and Southern had a statutory duty to notify plaintiff if he tested positive for HIV is without merit for the same reasons that plaintiff's statutory claim against Continental cannot prevail: the statute imposes no duty to notify.

Even if the statute imposed such duty, Western and Southern was not an "insurer" under the statute. Section 3901.46(A) defines when an insurer may require HIV testing of an applicant and § 3901.46 applies when the insurer was "underwriting an individual policy of life or sickness and accident insurance." Western and South-

ern was not underwriting plaintiff's policy because plaintiff had not applied to Western and Southern for insurance. Instead, plaintiff applied to Continental for insurance. Plaintiff's application had Continental's name on it and plaintiff stated numerous times that he knew he was applying to Continental for insurance. Hence, Western and Southern was not an insurer and, therefore, § 3901.46(B)(1) does not apply.

Plaintiff further asserts that Western and Southern had a common law duty to notify plaintiff of the positive test results. Like Continental, Western and Southern had no common law duty to notify plaintiff about the test results.

 Plaintiff also claims that Western and Southern breached its contractual obligation to notify plaintiff about positive test results. The well-settled rule in Ohio is that an agent who contracts with a third party on behalf of a disclosed principal, and as the authorized agent of that principal, is not personally liable on the contract. *Campbell v. Murdock,* 90 F.Supp. 297 (N.D.Ohio 1950); *Barents Navigation Ltd. v. Western Overseas, Inc.,* 1999 WL 1490855, 1999 U.S. Dist. Lexis 21211 (N.D.Ohio 1999). Plaintiff's application for insurance was captioned "Application to Continental General Insurance Company—Omaha, Nebr. 68124–7007." (Doc. 57, Exhibit A). Western and Southern's name does not appear on this application. Plaintiff stated that he was aware the application he submitted was to Continental. (Doc. 76 at 100). Thus, Continental was a disclosed principal and Mr. Balduff was its agent.

The agency agreement between Mr. Balduff and Western and Southern shows, moreover, that Balduff was an independent contractor authorized to accept applications on behalf of various insurance companies, including Continental (Doc. 78, Exhibit A). Under Ohio law, Mr. Balduff, as an authorized agent of Continental, is not personally liable on any contract entered into between plaintiff and the disclosed principal, Continental. Thus, Western and Southern, as Mr. Balduff's employer, is also not liable.

Furthermore, Western and Southern was not Continental's agent. Mr. Balduff was such agent. Even assuming Western and Southern was Continental's agent, Western and Southern is not liable because Continental was the disclosed principal and there was no contract regarding notification of test results.

Finally, the paramedical examiner who examined plaintiff was not hired by Western and Southern. Thus, no duty could attach to Western and Southern by virtue of the services provided by the paramedical examiner.

Therefore, defendant Western and Southern had no contractual duty to notify plaintiff if he tested positive for the HIV virus. Additionally, Western and Southern is not liable for intentional and/or negligent infliction of emotional distress for the same reasons, above, that Continental is not liable for any such distress.

### III. Defendant Lab*One*

 Plaintiff's primary claim that Defendant Lab*One* had a statutory duty to notify plaintiff if he tested positive for HIV is without merit for the same reasons that plaintiff's statutory claim against Continental cannot prevail: the statute imposes no duty to notify. Additionally, like Western and Southern, Lab*One* was not an "insurer" for the purposes of § 3901.46(B)(1) because it was not underwriting plaintiff's insurance policy. Furthermore, plaintiff asserts that Lab*One* had a duty to make a report of HIV test results to the Ohio Department of Health on "the appropriate form required by" the Department of Health. O.A.C. § 3701–3–

12(A). This regulation does not specify the type of form to be used in making the report and it does not mandate the contents of that report.

The Kansas statute in effect in 1997, K.S.A. § 65–6002, required HIV testing to be kept confidential and prohibited LabOne, a Kansas laboratory, from disclosing to public health officials the names of individuals who tested positive for HIV. Moreover, a Kansas Attorney General Opinion stated that a Kansas laboratory was obliged to follow Kansas law and maintain the confidentiality of an individual who tested positive for the HIV virus even though the individual may live in a state (such as Ohio) having a different law governing HIV test disclosure. Kansas Attorney General Opinion No. 95–5 (January 6, 1995). (Doc. 71, Exhibit H).

LabOne complied with Kansas law when it reported the positive HIV test results to the Kansas Department of Health on a no-name basis. While not including the name of the person, this report did note the person's date of birth, gender, county and state of residence, the date and nature of the test performed, and the name and address of the laboratory and the insurance company involved. (Doc. 71, Exhibit E). The Kansas Department of Health complied with Kansas law when it reported the positive test results (containing the same information as LabOne's report) to the Ohio Department of Health on a no-name basis. The Kansas Department of Health also sent a letter explaining that Kansas laboratories are prohibited from disclosing the names of the individuals in their reports. (Doc. 71, Exhibit F).

■ Generally, state statutes apply within the limits of the state and do not have extraterritorial effect. Baltimore & Ohio Railway Co. v. Chambers, 73 Ohio St. 16, 22, 76 N.E. 91 (1905). The Ohio Supreme Court has stated that:

Assuredly, Ohio will not sanction performance contrary to the law of the place of performance, but we are not confronted with that situation. The record contains no Iowa law or regulation governing the place of employment in question and no conflict with Iowa territorial law is before us. Therefore, we do not reach any federal constitutional question of the denial of full faith and credit to the public acts of Iowa. That issue might have arisen only if a territorial requirement had prescribed conduct which would have prevented compliance with conduct prescribed by Ohio for this employment.

State ex rel Bailey v. Krise, 18 Ohio St.2d 191, 249 N.E.2d 55 (1969).

Subjecting LabOne to an Ohio requirement to report plaintiff's name to the Ohio Department of Health would force LabOne to perform an act that would violate the law of its home state.

Additionally, courts will generally apply the law where the conduct occurred if there is a strong public policy underlying that law and the defendant's act or omission was required by that law, not merely privileged under that law. Restatement (Second) of Conflict of Laws § 163 com. a. (1969). A strong public policy is demonstrated by the fact that a violation of K.S.A. § 65–6002 is a crime. K.S.A. § 65–6005. On the other hand, the Ohio regulation does not specify the type of form to be used in making the report and it does not mandate the contents of that report. O.A.C. § 3701–3–12(A). Additionally, Ohio statutes create no express cause of action for failure to notify the Ohio Department of Health pursuant to O.R.C. § 3701.24(C) and O.A.C. § 3701–3–12. Therefore, LabOne fully complied with all requirements imposed on it by Kansas law, the law which governed it, and, thus, LabOne did not breach any statutory duty.

Additionally, defendant Lab*One* did not have a common law duty to notify plaintiff of the test results for the reasons, discussed above, that apply to the other defendants. The rule in *Deramus, supra,* equally applies to the laboratory doing the testing. Lab*One* did not undertake to provide medical treatment to plaintiff or to counsel him about his health status. Lab*One* conducted the laboratory tests and provided the results to Continental for the purposes of enabling Continental to determine plaintiff's insurability under Continental's underwriting guidelines. The relationship between plaintiff and Lab*One* was not one in which plaintiff had a right to rely on Lab*One* to provide information to him about his health status. Therefore, Lab*One* had no common law duty to notify plaintiff of his test results.

■ Plaintiff also claims that Defendant Lab*One* breached its contractual obligation to notify him if the HIV test results were positive. Lab*One's* name only came to plaintiff's attention during plaintiff's examination in the Notice and Consent for Testing form that the paramedical examiner completed with plaintiff on May 10, 1997. (Doc.71, Exhibit B). That form does not state that Lab*One* will notify the plaintiff if the test results were positive. Rather, the form states that the test results "will be reported by the laboratory to the insurer" and that, if plaintiff's test results were positive, "the insurer *may* contact you [plaintiff] about them." (Doc. 71, Exhibit B at 2, emphasis added). Thus, Lab*One* did not have a contractual obligation to report the test results to plaintiff.

The other form that plaintiff completed, requesting that his test results be sent to his address, was not sent to Lab*One.* (Doc. 71, Exhibit C). However, even if the form was sent to Lab*One,* it did not create contractual obligations for the reasons discussed with regard to the other defendants.

Furthermore, no person from Lab*One* made any promises to plaintiff that Lab*One* would report plaintiff's test results to him. Plaintiff had no contact with any agents or employees of Lab*One* Neither Mr. Balduff nor the paramedical examiner were agents or employees of Lab*One* when they were in contact with plaintiff in May, 1997. Therefore, Lab*One* did not have any contractual arrangements with, or contractual obligations to, plaintiff.

Finally, Lab*One* is not liable for intentional and/or negligent infliction of emotional for the reasons applicable to the other defendants. Additionally, Lab*One's* conduct was not extreme and outrageous. Lab*One* promptly reported the test results to Continental. Lab*One* also fully complied with applicable Kansas law by reporting the HIV test results to the Kansas Department of Health on a no-name basis. *See Hall v. United Labs, Inc.,* 31 F.Supp.2d 1039 (N.D.Ohio 1998) (not outrageous for laboratory to report results of drug test pursuant to duties in a confidential manner).

### IV. Defendant ChoicePoint

Plaintiff's primary claim that Choice-Point had a statutory duty to notify plaintiff if he tested positive for HIV is without merit for the reasons set forth with regard to the other defendants. Additionally, like Western and Southern and Lab*One,* ChoicePoint was not an "insurer" for the purposes of § 3901.46(B)(1) because it was not underwriting plaintiff's insurance policy.

Furthermore, ChoicePoint did not have a common law duty to notify plaintiff if he tested positive for aids. Plaintiff never authorized Equifax/PMI or any related entity to discover his private test results. Additionally, the rule in *Deramus, supra,* equally applies to the paramedical examiner who drew the blood. The paramedical

examiner and ChoicePoint did not undertake to provide medical treatment to plaintiff or to counsel him regarding his health status. The paramedical examiner drew the blood and sent it to Lab*One* for the purpose of enabling Continental to determine plaintiff's insurability under Continental's underwriting guidelines. The relationship between plaintiff and ChoicePoint was not one in which plaintiff had a right to rely on ChoicePoint to provide information on plaintiff's health status. Plaintiff's insurance examination was conducted by a paramedical examiner, not a physician. No professional relationship existed. Additionally, ChoicePoint did not test the blood and never knew of the test results. Therefore, ChoicePoint had no common law duty to notify plaintiff of his test results.

Additionally, ChoicePoint did not have a contractual duty to notify plaintiff if he tested positive for HIV. Plaintiff claims that during the course of the paramedic's examination, the examiner made certain statements to the effect that plaintiff would be informed if the HIV test results were positive. Assuming the statements were made, they did not give rise to contractual obligations on the part of ChoicePoint for the reasons discussed with regard to the other defendants.

Finally, ChoicePoint is not liable for intentional and/or negligent infliction of emotional distress for the reasons discussed with regard to the other defendants.

### CONCLUSION

For the foregoing reasons, it is

**ORDERED THAT** defendants' motions for summary judgment be, and the same hereby are, granted.

**So ordered.**