592 So.2d 79 (1991)
Jean Z. LOWERY, Individually and as Administratrix of the Estate of H.W. Lowery, Deceased
v.
GUARANTY BANK AND TRUST COMPANY and Life Insurance Company of Mississippi.
No. 07-CA-59488.
Supreme Court of Mississippi.
December 11, 1991.
*80 Edward J. Bogen, Jr., McGee & Bogen, Leland, for appellant.
Frank J. Dantone, Jr., Henderson Duke Dantone & Hines, Greenville, Ann E. Wedding, Earl Keyes, Keyes Danks Moss & Leonard, Jackson, for appellees.
Before HAWKINS, P.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
On May 15, 1986, Jean Z. Lowery, individually and as administratrix of the Estate of H.W. Lowery, deceased, filed a complaint in the Washington County Circuit Court against Guaranty Bank and Trust Company (Guaranty Bank) and Life Insurance Company of Mississippi (Life Insurance). Mrs. Lowery alleged in her complaint that Guaranty Bank and Life Insurance negligently and in breach of a fiduciary relationship failed to give notice that credit life insurance on two notes would expire with the maturity of the notes. The credit life insurance secured notes executed with Guaranty Bank. Mrs. Lowery demanded $14,762.60 in actual damages and $250,000.00 in punitive damages.
On July 14, 1987, Life Insurance filed a motion for summary judgment arguing that it was entitled to a judgment as a matter of law as the credit life insurance contracts on the notes were issued for a specific period of time, which had expired prior to the death of Mr. Lowery; therefore, there was no genuine issue of fact. On July 28, 1987, Guaranty Bank followed suit, arguing that it too was entitled to judgment as a matter of law on the same grounds.
After considering the pleadings, depositions, exhibits, briefs and hearing arguments, the trial court found that there were no "facts warranting a jury's scrutiny, and that there is no genuine issue as to any material fact; that an absence of legal liability is displayed, and that the defendants are entitled to judgment as a matter of law." On July 5, 1988, the trial court entered an order granting the motion for summary judgment to Guaranty Bank and Life Insurance.
Mrs. Lowery appeals asserting only one issue:

WHETHER THE TRIAL COURT WAS CORRECT IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT?

FACTS
In 1979, H.W. and Jean Lowery executed an original promissory note with Guaranty Bank and Trust Company for $12,529.00, with Robert W. Steinriede, president of the Hollandale Branch of Guaranty Bank, as the loan officer. On December 12, 1983, the original note was renewed by a $9,037.30 note, with a maturity date of June 15, 1984. Credit life insurance was taken out to secure the note for its term (183 days). The credit life insurance was acquired through a group credit life insurance policy that Guaranty Bank had with Life Insurance Company of Mississippi.
On February 14, 1984, the Lowerys executed a promissory note for $2,032.67, with a maturity date of October 15, 1984. Credit life insurance was taken out for the term of the note (244 days). The $9,000.00 note was renewed on June 19, 1984. The note's new maturity date was October 1, 1984. Mr. Lowery acquired credit life insurance for the 104 day term of the note. Both notes were also secured by a deed of trust to the Lowery property.
Mr. Lowery worked as an aerial applicator, or in common parlance, a crop duster. On September 21, 1984, during a period of time that he was working in Louisiana, Guaranty Bank sent a due notice to the Lowerys for the $9,000.00 note due October 1st. Mrs. Lowery then contacted Mr. Steinriede at the bank, who handled the *81 notes for the Lowerys, to inform him that her husband was working in Louisiana and that it would be at least two more weeks before he could get home to take care of the note. Mr. Steinriede then told Mrs. Lowery something to the effect that that would be fine, but to have Mr. Lowery come in to take care of the notes as soon as he got home. Although Mr. Steinriede did not tell Mrs. Lowery he was extending the notes, she assumed that he was extending the notes for two weeks.
Mr. Lowery did not make it home in two weeks as expected, so he called his wife and instructed her to call Mr. Steinriede at the bank and tell him that he would not be in until after October 15th, and to ask if the notes would be all right until then. Mrs. Lowery was not able to talk to Mr. Steinriede, but left the message with his secretary. Mr. Steinriede told Mrs. Lowery, through his secretary, to have Mr. Lowery come in as soon as he got home. Again there was no indication that the notes were being extended or renewed.
Unfortunately, Mr. Lowery never made it home. He died on October 24th. A few days after the death of Mr. Lowery, Mrs. Lowery and her son, Michael, went to the bank to talk to Mr. Steinriede to inform him of Mr. Lowery's death and to confirm that the credit life insurance would pay off the notes. Mr. Steinriede told them to take care of the arrangements for the burial of Mr. Lowery and he would check on the life insurance and let them know. When they went back, Mr. Steinriede informed them that the credit life insurance on the notes had expired. On May 15, 1986, Mrs. Lowery filed her complaint against Guaranty Bank and Life Insurance.
The discovery documents revealed that the insurance policy with the bank indicated that individual insurance terminated either on the date the loan is prepaid, the date the loan is refinanced, the date the original term of the insurance expired, or the date of payment of a dismemberment benefit. Mr. Steinriede dealt with the Lowerys in their dealings with Guaranty Bank in that he more or less was their loan officer. It was the customary practice of the Lowerys to buy credit life insurance. Mrs. Lowery knew very little about the loans because Mr. Lowery handled all of the business transactions. Guaranty Bank denied that it formally renewed or extended the notes.

THE LAW
Rule 56(c) of the Mississippi Rules of Civil Procedure provides that summary judgment shall be entered by a trial court "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule. Galloway v. Travelers Insurance Co., 515 So.2d 678, 682 (Miss. 1987).
In determining whether the entry of summary judgment was appropriate this Court reviews the judgment de novo, making its own determination on the motion, separate and apart from that of the trial court. The evidentiary matters are viewed in the light most favorable to the nonmoving party. If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is affirmed. If after examining the evidentiary matters there is a genuine issue of material fact, then the grant of summary judgment is reversed. Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990); Allison v. State Farm Fire & Casualty Co., 543 So.2d 661 (Miss. 1989); Short v. Columbus Rubber and Gasket Co., 535 So.2d 61 (Miss. 1988); Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).

A. CONTRACT CLEAR AND UNAMBIGUOUS
In support of their arguments for summary judgment, both Guaranty Bank and Life Insurance argue that the notes clearly indicate that the term of the credit life insurance ran with the term of the note and *82 expired with maturity date of the notes. The notes were never formally extended; and if they were the insurance was not requested. They contend that Mrs. Lowery cannot recover on the policy because the notes show that the insurance had expired and no new coverage was requested.
Where the language of an insurance contract is clear and unambiguous it is not construed in favor of the insured but is construed as written. State Farm Mutual Auto Insurance Company v. Gregg, 526 So.2d 554, 556 (Miss. 1988); Ford v. Lamar Life Insurance Co., 513 So.2d 880 (1987). The policy states that individual insurance expires the date the original term of insurance expires. The notes show that Mr. Lowery acquired credit life insurance for a term of 104 days (June 19, 1984 to October 1, 1984) on the $9,000.00 note, and for a term of 244 days (from February 14, 1984 to October 1, 1984) on the $2,000.00 note. The record clearly indicates that the credit life insurance terminated with the maturity date of the notes.
However, the policy also provides a "grace period benefit." This provision states:
Grace Period Benefit: In addition to the death benefit for reducing life insurance as provided in the Death Benefit Provision, the Company will pay an additional benefit to the Creditor Beneficiary of an amount, if any, that the unpaid balance of the loan at the date of death exceeds the death benefit, except that the amount of such additional benefit shall not exceed two (2) times the uniform monthly decrease as defined in the Death Benefit Provision. No Grace Period Benefit will be paid if death occurs sixty (60) or more days after the expiration of the term of insurance.
On Level Life Insurance, the Company will pay the death benefit if the Insured Debtor should die within seven (7) days after the expiration of the term of the insurance and the insured loan is unpaid and outstanding as of the date of death.
This provision allows that where the credit life insurance death benefit is "reducing life," the grace period for reducing life insurance is 60 days. If the death occurs within 60 days of the expiration of the insurance, the death benefit will still be paid. The grace period for "level life" is seven (7) days, i.e., the death benefit is paid if the insured debtor dies within seven (7) days of the expiration of the term of the insurance.
Assuming that Mr. Lowery owned the "reducing life" form of credit life insurance, then he had 60 days of additional coverage from the expiration of the insurance. Mr. Lowery's death occurred well within that 60 day period and the insurance would pay both notes. However, if he had "level life," the insurance would not cover the notes. Mr. Lowery would have only had a seven day grace period and his death was beyond that period for both notes.
The terms of the insurance coverage are clearly indicated on the face of the notes and, looking only at those, it is clear that credit life insurance on the notes had expired. But the insurance policy also allows for a grace period. There is no indication from the notes whether the credit life insurance on the Lowery notes was "reducing life" or "level life," so there is no indication as to which grace period applies to Mr. Lowery's death. Treating the insurance as "reducing life" places the Lowerys within the 60 day grace period. Treating it as "level life" excludes the Lowerys. Ambiguities in an insurance contract are resolved in favor of the insured. This Court has in the past held that credit life insurance such as that taken out by the Lowerys may be "reducing life" insurance and the grace period applied. See, Gulf Guaranty Life Insurance Co. v. Thompson, 363 So.2d 297 (Miss. 1978).
There is a material issue of whether the Lowerys fit within one of the grace periods, and whether coverage by Life Insurance is available to the Lowerys even after the insurance expired.

B. BREACH OF DUTY TO GIVE NOTICE OF TERMINATION
Mrs. Lowery does not challenge the terms of the insurance contracts, but *83 grounds her challenge in tort. She asserts that Life Insurance and Guaranty Bank, its agent, negligently failed to notify her and her husband that the credit life insurance would terminate with the maturity of the note. She also asserts that Guaranty Bank breached its fiduciary duty to her and her husband in failing to inform them that the credit life insurance could not be extended beyond the maturity date of the notes.
In support of her argument, Mrs. Lowery correctly points out that an agent has a duty to use the degree of diligence and care which a reasonably prudent person would ordinarily exercise in the transaction of his own business, including the obligation of providing the proper information concerning the progress of the business entrusted. Security Insurance Agency, Inc. v. Cox, 299 So.2d 192, 194 (Miss. 1974); McKinnon v. Batte, 485 So.2d 295 (Miss. 1986). She cites a number of cases which show that an agent may be liable to an insured for a breach of duty to establish Guaranty Bank and Life Insurance's duty. E.g., Nold v. Selmer Bank & Trust Co., 558 S.W.2d 442 (Tenn. Ct. App. 1977); Lancaster Estate v. Williamson County Bank, 664 S.W.2d 294 (Tenn. Ct. App. 1983); Carrollton Federal Savings & Loan Association v. Young, 165 Ga. App. 262, 299 S.E.2d 395 (1983). All of the cases cited concern an agent assuming a duty to take affirmative action. In such cases, an agent or broker may be held liable if he breaches that duty. However, some special circumstance is needed to require an agent to go beyond the legal duty placed on him. Compare, Gabrielson v. Warnemunde, 443 N.W.2d 540 (Minn. 1989).
Absent a statutory requirement or policy provision, an insurer has no duty to provide notice of the termination of a policy. First National Bank in Sioux City v. Watts, 462 N.W.2d 922, 927 (Iowa 1990); Compare, Gorman v. Southeastern Fidelity Insurance Company, 621 F. Supp. 33, 37 (D.C.Miss. 1985). There is no provision in the policy nor is there a statute requiring that the insurer provide notice of termination. Therefore, Life Insurance had no duty to inform the Lowerys of the termination of the credit life insurance.
Mrs. Lowery also argues a breach of a fiduciary duty owed to her and her husband by Guaranty Bank. She argues that the duty obligated Guaranty Bank to give notice of the expiration of the credit life insurance and inform them that it would not be extended with any renewals.
A fiduciary duty must exist before a breach of the duty can occur. "Fiduciary relationship" is a very broad term embracing both technical fiduciary relations and those informal relations which exist wherever one person trusts in or relies upon another. Black's Law Dictionary 564 (5th Ed. 1979). A fiduciary relationship may arise in a legal, moral, domestic, or personal context, where there appears "on the one side an overmastering influence or, on the other, weakness, dependence, or trust, justifiably reposed." Miner v. Bertasi, 530 So.2d 168, 170 (Miss. 1988); Matter of Estate of Haney, 516 So.2d 1359 (Miss. 1987). Additionally, a confidential relationship, which imposes a duty similar to a fiduciary relationship, may arise when one party justifiably imposes special trust and confidence in another, so that the first party relaxes the care and vigilance that he would normally exercise in entering into a transaction with a stranger. Nicholson v. Ash, 800 P.2d 1352, 1355 (Colo.Ct.App. 1990).
In credit life insurance cases, a fiduciary relationship between bank and consumer-borrower may be established on the basis of contract, agency, or the reposing of trust and confidence. Budnitz, The Sale of Credit Life Insurance: The Bank as Fiduciary, 62 N.C.L.Rev. 295, 299 (1984). In Parnell v. First Savings and Loan Association of Leaksville, 336 So.2d 764 (Miss. 1976), a widow filed suit for cancellation of a deed of trust for failure of the savings and loan association to obtain credit life insurance on her husband. At the time of the loan closing, the Parnells were asked if they wanted credit life insurance, and they answered in the affirmative. The Parnells paid the first year's premium and paid monthly installments on the second year's *84 premium. The manager for the savings and loan failed to secure Mr. Parnell's signature on the insurance application. The manager told Mr. Parnell that no insurance could be issued until the application was completed and signed. The application had not been signed when Mr. Parnell died. Later, the widow Parnell was informed that no policy had been issued and that she had no insurance.
This Court held that when the savings and loan financed, collected and retained one year's premium payment and monthly premium payments for the credit life insurance, it assumed a contractual obligation to obtain the credit life insurance and apply the premiums toward the insurance, and that it stood in a fiduciary capacity to the Parnells to see that the premiums were used to obtain credit life insurance. Parnell, 336 So.2d at 768.
In Stone v. Davis, 66 Ohio St.2d 74, 419 N.E.2d 1094 (1981), a young married couple, Danny and Judy Davis (21 and 19 years old respectively), purchased a dairy farm from the Stones, financing a major part of the purchase with a mortgage loan. The Davises were presented a disclosure form which contained a provision for mortgage insurance. Mr. Davis signed the statement expressing a desire for mortgage insurance, but they were not advised that they had to procure the insurance themselves. No mortgage insurance was obtained for the Davises. The Davises fell behind on the mortgage and then Mr. Davis died. The Stones instituted a foreclosure action against the Davises, and the savings and loan company cross-claimed against Mrs. Davis for the remaining balance of the mortgage loan. Mrs. Davis, in her cross-claim, alleged that the savings and loan negligently, or in breach of a promise, failed to obtain mortgage insurance as requested by her husband. Stone, 419 N.E.2d at 1096.
In considering the cross-claims, the Supreme Court of Ohio stated that a fiduciary relationship need not be created by contract; it may arise from an informal relationship where both parties understand that a special trust and confidence has been reposed. That Court took into consideration that the Davises were a young couple and apparently had no previous experience with the complex mortgage loan process. The Davises justifiably relied on the officers of the savings and loan as experts. Both sides must have understood that a special trust and confidence had been placed in the savings and loan to advise them on obtaining insurance. The savings and loan breached its fiduciary duty to disclose in failing to adhere to its customary policy of informing the Davises that they had to obtain the insurance themselves. Stone, 419 N.E.2d at 1098.
In Hutson v. Wenatchee Federal Savings & Loan Association, 22 Wash. App. 91, 588 P.2d 1192 (1978), a married couple approached a bank about obtaining a home improvement loan. The couple took out a loan to build a home instead, when the bank advised them that a home construction loan would be easier to finance. Later the husband was killed in an accident. The wife then found out that the bank had procured mortgage insurance and no credit life insurance. The wife sued alleging that the bank had impliedly agreed to obtain credit life insurance, that the bank had a duty to define the term "mortgage insurance," and that the failure to do so constituted negligence. Hutson, 588 P.2d at 1194.
In discussing the negligence theory, that court stated that although a lender is not a fiduciary in the common sense of the term and the extra service offered by the lender did not create a fiduciary duty, the circumstances of the lender-borrower relationship did represent a "quasi-fiduciary relationship of trust and confidence." There was a jury question of whether the lender had a duty to define any ambiguous terms or specialized terms which might mislead unknowledgable customers who rely on the lender for advice. Hutson, 588 P.2d at 1198-1200.
Though these cases deal primarily with procuring insurance, they illustrate that the facts and circumstances surrounding a transaction can create at least a quasi-fiduciary relationship between a lender and *85 a customer. The determination of what constitutes a confidential or fiduciary relationship is a question of fact. Southern Mortgage Company v. O'Dom, 699 F. Supp. 1227, 1231 (S.D.Miss. 1988).
In this case, there was no formal fiduciary relationship between the parties. However, a fiduciary relationship could have been created from the Lowerys' dealings with Guaranty Bank aside from the note. In this case, Mr. Steinriede had dealt with the Lowerys on each of their notes and was basically their loan officer. The Lowerys customarily took out credit life insurance on their notes. Mrs. Lowery knew very little about the notes because Mr. Lowery handled all of the family business. On the two occasions that Mrs. Lowery called Mr. Steinriede and informed him that Mr. Lowery was working out of state and would not be able to come in and take care of the notes, Mr. Steinriede indicated that the notes could be put on hold until Mr. Lowery returned home to take care of them. No formal extension of the notes was made, but Mrs. Lowery assumed from Mr. Steinriede's statements that the notes had been extended. Mrs. Lowery was not informed that the credit life insurance would not be in force during the period that the notes were on hold. When Mrs. Lowery and her son, Michael, came to confirm that the credit life insurance would pay off the notes, Mr. Steinriede told them that he would check on it and let them know.
The evidence indicates that because of their history of dealings with Guaranty Bank and because the bank placed the notes on hold until Mr. Lowery could come in to take care of them, the Lowerys relied on that relationship and placed trust and confidence in Guaranty Bank to the point of being less vigilant about the coverage of the credit life insurance than they had been in the past. If that were the case, the bank owed them a duty to notify them that the credit life insurance had lapsed and that it would not be in force while they waited on Mr. Lowery to return. Viewing the evidence in a light most favorable to the Lowerys, there is a question of fact of whether under these facts and circumstances Guaranty Bank had a fiduciary duty to the Lowerys, obligating it to notify them of the expiration of the credit life insurance.
The evidence is of such a nature that a genuine issue of material fact exists as to whether the Lowerys benefit from one of the grace periods and whether the actions of Mr. Steinriede created a fiduciary duty to notify them of the coverage of the credit life insurance. The existence of these material issues precluded the entry of summary judgment. Therefore, we reverse and remand for trial.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, BANKS and McRAE, JJ., concur.
ROBERTSON, J., concurs in part and dissents in part by separate written opinion joined by PITTMAN, J.
ROBERTSON, Justice, concurring in part; dissenting in part:
H.W. and Jean Lowery executed and delivered to Guaranty Bank and Trust Company two single payment promissory notes, to-wit: a $9,000.00 note payable October 1, 1984, and a $2,032.67 note payable October 15, 1984. When made, these notes were covered by credit life insurance through a group policy the Bank held with Life Insurance Company of Mississippi. All agree that neither note nor the credit insurance covering them was renewed at maturity. The Bank merely forbore to enforce its rights. As H.W. Lowery met his untimely end on October 24, 1984, all agree the credit life coverages expired, subject only to the grace period benefit clauses, quoted on page five of the majority opinion.
More globally, it appears Life of Mississippi affords Guaranty Bank and its designated debtors two types of credit life coverage. In the case of single payment notes, such as those the Lowerys made in the Bank's favor, Life of Mississippi provides what it calls "Level Life Insurance." On the other hand, in the case of installment notes, the policy affords what is referred to as "Reducing Life Insurance." The problem *86 is that Level Life Insurance affords its insureds a seven day grace period, viz.,
The company will pay the death benefit if the insured debtor should die within seven days after the expiration of the term of the insurance... .
H.W. Lowery died twenty-four days after the expiration of the term of the insurance on the $9,000.00 note and nine days after the expiration date on the $2,032.67 note. The grace period benefit is not available to extend the insurance more than seven days beyond the maturity of the notes.
The majority finds itself unable to say which of the grace periods apply. This becomes important because the Reducing Life grace period is sixty days, and, if it applies, the credit life coverage is available. What is clear from the language quoted by the majority at page five from the policy itself, however, is that Reducing Credit Life insurance is the sort of insurance provided for installment loans. By no stretch of the imagination may the Lowerys' loans be called installment loans. I would affirm the summary judgment the Circuit Court granted in favor of Life Insurance Company of Mississippi and against Jean Z. Lowery, individually and administratrix of the estate of H.W. Lowery, deceased.
Jean Lowery's claim against Guaranty Bank and Trust Company is another matter. I concur in our reversal there and in what the majority says in Part B, pages 6-12, with the sole exception that I see not the slightest hint in anything before us that Guaranty Bank has engaged in conduct that might subject it to an assessment of punitive damages. I would affirm the summary judgment in favor of Guaranty Bank insofar as it dismisses Lowery's claim for punitive damages; otherwise, I concur in our decision reversing and remanding on the remainder of Lowery's claim against the bank as though the motion for summary judgment had been denied.
PITTMAN, J., joins this opinion.