McRAE, Presiding Justice,
Dissenting:
¶ 69. Because the plaintiffs’ causes of action are based in the common law, they are not preempted by state statutes, i.e. Miss.Code Ann. §§ 83-1-1 et seq. (1999). The majority now seeks to not only invoke the filed rate doctrine in this case, but is attempting to expand it to include questions “which are subject to oversight by the Department of Insurance.” (emphasis added). No authority is cited for this aggrandizement of the filed rate doctrine, and no guidance is given to the trial court in how to apply this new rule of law. The majority simply invites American Bankers and Fidelity to relitigate this case using an unprecedented and nebulous holding. This case is not about a filed rate doctrine. Based on our previous holding in American Bankers Ins. Co. v. Alexander, 818 So.2d 1073 (Miss.2001), I would affirm the trial court. Accordingly, I dissent.
¶ 70. As in Alexander, the case at bar involves claims for breach of fiduciary duty, breach of implied covenants of good faith and fair dealing, and fraud. In Alexander we held that these causes of action are not barred by the filed rate doctrine. All of these causes of action are founded in the common law, and this Court has previously held that such claims are not preempted by state statutes. Id. (citing *1212 Protective Servs. Life Ins. Co. v. Carter, 445 So.2d 215, 216 (Miss.1983)).
¶ 71. We also noted that Miss.Code Ann. § 83-5-33 expressly prohibits any person from engaging in trade practices that are “unfair or deceptive acts or practices [which] include misrepresentations and false advertisements, written misrepresentations, and false advertisements, and false information and advertising in general,” regardless of the insurance commissioner’s authority to approve rates.
¶ 72. Specifically, Wells and Oliver allege, and the jury agreed, that American Bankers and Fidelity backdated policies for up to six months, that the premiums were based on the gross amount of the loan rather than the net payoff amount of the loan, that the vehicle must have been repossessed before a claim could be filed, and that the rates were fraudulently inflated by basing premiums on eighteen months and adding a 45% surcharge to premiums.
¶ 73. This case, like Alexander, is not a “rate case,” but is a combination of contract, tort, and statutory actions. In Gelb v. AT & T Co., 813 F.Supp. 1022, 1023 (S.D.N.Y.1993), the plaintiff brought a combination of federal common law fraud and statutory claims. The federal court held that the filed rate doctrine would not protect a defendant who unlawfully extracted a payment, even if at a lawful rate, and that the doctrine could not be used to bar all tort claims. Id. That court noted, as we did in Alexander, that allowing the doctrine to bar such claims would virtually immunize defendants against common law claims, so long as they followed the filed rate.
¶ 74. Numerous jurisdictions have recognized, as have we in Alexander, that certain circumstances will preclude the application of the filed rate doctrine. See H.J., Inc. v. Northwestern Bell Tel. Co., 954 F.2d 485, 490 (8th Cir.1992) (holding filed rate doctrine to be arguably inapplicable if the claim does not attack the amount of the rate filed, and does not require the court to “second guess” the rate-making agency); Gulf States Utils. Co. v. Alabama Power Co., 824 F.2d 1465, 1472 (5th Cir.1987) (cause of action for fraudulent inducement will not be barred by the filed rate doctrine if it “would not interfere with the federal agency’s rate-making powers”); Litton Sys., Inc. v. American Tel. & Tel. Co., 700 F.2d 785, 820 (2d Cir.1983) (filed rate doctrine not apply where the court was not called upon to even indirectly determine what a reasonable rate would have been); City of Kirkwood v. Union Elec. Co., 671 F.2d 1173, 1179 (8th Cir.1982) (filed rate doctrine does not bar the award of antitrust damages where plaintiffs did not challenge the reasonable of the rates, but rather their anti-competitive effect); Wegoland, Ltd. v. NYNEX Corp., 806 F.Supp. 1112, 1116 (S.D.N.Y.1992) (filed rate doctrine was “arguably inapplicable” in cases where the courts are not asked to determine what a reasonable rate should be), aff'd, 27 F.3d 17 (2d Cir.1994).
f 75. I further disagree with the majority’s determination that “[w]e find that a fiduciary relationship between a lender and a borrower does not arise when the borrower breaches the lending contract.” While it is true that issues regarding forced-placed CPI do not arise unless a borrower breaches the contract, this does not mean that a fiduciary duty cannot arise as a matter of law. Here, the majority attempts to take a big leap from existing law.
¶ 76. We have previously ruled on fiduciary duties in Lowery v. Guaranty Bank & Trust Co., 592 So.2d 79, 83 (Miss.1991):
“Fiduciary relationship” is a very broad term embracing both technical fiduciary relations and those informal relations *1213 which exist whenever one person trusts or relies on another ... A fiduciary relationship may arise in a legal, moral, domestic, or personal context where there appears “on the one side an overmastering influence or, on the other side, weakness, dependance or trust justifiably reposed.”
(emphasis added). Significantly, whether a fiduciary duty exists is a question of fact. Id. at 85.
¶ 77. In addition to being agents of each other, American Bankers and Fidelity had contracted to provide insurance on the plaintiffs’ vehicles. Because the plaintiffs had contracted with Fidelity for financing, and subsequently purchased insurance from American Bankers, they have reasonably expected that “both defendants would deal with them in good faith as such an obligation is imposed on parties who contract for performance of obligation with each other.” Alexander, 2001 WL 83952, at * 11 (citing Cenac v. Murry, 609 So.2d 1257 (Miss.1992)). Furthermore, the contract between the plaintiffs and Fidelity was entered into on a “take it or leave it” basis, and the plaintiffs were clearly at a disadvantage in regard to sophistication and knowledge, as well as in a weaker financial position.
¶ 78. The existence of a fiduciary relationship cannot be precluded as a matter of law solely because the plaintiffs were in breach of their financing contract. The previously mentioned evidence substantially supports the finding that both American Bankers and Fidelity owed a fiduciary duty to the plaintiffs. The trial court found as much, and we should defer to its finding of fact.
¶ 79. Additionally, the majority concludes that a jury issue was created as to Fidelity, but inexplicably remands “for further proceedings” without further explanation. What further proceedings are needed on this issue? The jury has decided a jury issue, its decision was supported by the evidence, and its decision should stand.
¶ 80. The issues raised in the case before us are not barred by the filed rate doctrine, as they are founded in the common law and do not require the court to determine what a reasonable rate would have been, thereby “second guessing” the Department of Insurance. The holding of the majority is in direct conflict with our prior holding in American Bankers v. Alexander, and has no precedential support. Furthermore, the majority attempts to give Fidelity and American Bankers a “second bite at the apple” by remanding jury issues that have already been decided by the jury against both Fidelity and American Bankers, and are supported by substantial evidence. Accordingly, I dissent.
DIAZ and EASLEY, JJ., join this opinion.