906 So.2d 778 (2004)
Debbie BUCK, As Mother and Natural Guardian of Jamie BUCK, Appellant,
v.
CAMP WILKES, INC.; Girl Scouts of Gulf Pines Council, Inc.; and Deborah Boozer, Appellees.
Nos. 2003-CA-01065-COA, 2003-CA-01829-COA.
Court of Appeals of Mississippi.
December 14, 2004.
*779 James Clayton Gardner, Biloxi, David C. Frazier, Pascagoula, William L. Denton, Biloxi, attorneys for appellant.
Dorrance Dee Aultman, Roger T. Clark, Gulfport, Patrick R. Buchanan, Biloxi, Kimberly Dawn Saucier Rosetti, Gulfport, Samuel Trent Favre, attorneys for appellees.
Before KING, C.J., LEE, P.J., and IRVING, J.
IRVING, J., for the Court.
¶ 1. Debbie Buck filed a personal injury action on behalf of her minor daughter, Jamie, against Camp Wilkes, Girl Scouts of Gulf Pine Council, Inc., and troop leader Deborah Boozer, for injuries sustained when the child fell out of a bunk bed at camp. In her complaint, Buck alleged that the defendants' negligent conduct caused Jamie to sustain multiple damages. In response, Boozer filed a motion for summary judgment, and Girl Scouts filed a joinder, adopting Boozer's motion. On April 17, 2003, after a hearing on the matter, the trial judge granted Boozer and Girl Scouts's motion and found that Buck failed to show that the defendants' actions caused or contributed to Jamie's fall. On May 14, Buck filed a notice of appeal of the judge's grant of Boozer and Girl Scouts's motion.
¶ 2. On May 28, Camp Wilkes filed a motion for summary judgment. The trial court entered a final judgment of dismissal, granting Camp Wilkes's motion, and Buck again filed a notice of appeal. Buck's first and second appeal were consolidated.
¶ 3. In this appeal, Buck seeks review of whether the trial court committed reversible error (1) in failing to follow existing standards in granting the defendants' motions for summary judgment, (2) in finding no merit to Buck's argument that a causal relationship existed between Boozer's temporary absence at the time of the accident and Jamie's falling from the bed, and in applying the wrong standard when considering Boozer and the Girl Scouts's lack of supervision, and (3) in ruling as a matter of law that a bunk bed is not a dangerous instrumentality and that Appellees' use of bunk beds did not amount to a failure on their part to use reasonable care in providing Jamie a reasonably safe place to sleep.
*780 ¶ 4. We find no reversible error; therefore, we affirm the trial court's grant of summary judgment in favor of the Appellees.

FACTS
¶ 5. In June 2000, thirteen-year-old Jamie Buck attended a Girl Scouts camping trip with her troop at Camp Wilkes. The chaperones for the trip were troop leader, Deborah Boozer, and assistant leader, Jenny White. Upon arriving at the camp, Jamie's mother helped Jamie set up Jamie's bed.[1] The next day, however, the troop moved to another cabin because their refrigerator was not working.[2] That night, all of the girls decided to sleep on the top bunks, and everyone, except Jamie, pulled their beds together to make a single bed. The following night, Jamie was asleep on the top bunk when she rolled out of her bed and sustained injuries to her face. Boozer was not present at the time of the accident because she had gone to retrieve supplies but had left the troop's assistant leader with the girls while she was gone. Additional facts will be related during our discussion of the issues.

DISCUSSION AND ANALYSIS OF THE ISSUES

(1)Standard of Review
¶ 6. Buck first contends that by granting the defendants' summary judgment motions, the trial judge failed to view the facts and issues in the light most favorable to her.
¶ 7. The law is well established with respect to the grant or denial of summary judgments. A summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "All that is required of an opposing party to survive a motion for summary judgment is to establish a genuine issue of material fact by the means available under the rule." Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991) (citing Galloway v. Travelers Ins. Co., 515 So.2d 678, 682 (Miss.1987)). "In determining whether the entry of summary judgment [is] appropriate, [the appellate court] reviews the judgment de novo, making its own determination on the motion, separate and apart from that of the trial court." Lowery, 592 So.2d at 81. "The evidentiary matters are viewed in the light most favorable to the nonmoving party." Id. "If after this examination, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, then summary judgment is affirmed, but if after examining the evidentiary matters there is a genuine issue of material fact, the grant of summary judgment is reversed." Lowery, 592 So.2d at 81 (citing Newell v. Hinton, 556 So.2d 1037, 1041 (Miss.1990)).
¶ 8. A thorough examination of the record reveals that Buck failed to meet her burden of producing significant evidence to rebut the defendants' showing that no genuine issue of material fact existed. Buck also produced no evidence to show that the defendants' breached the established standard of care and that such breach was the cause of Jamie's injuries. As a result, the trial judge appropriately granted the defendants' summary judgment motions.

*781 (2) Breach of Duty

¶ 9. Buck argues that the trial court erred in finding that there was no causal relationship between Boozer's temporary absence at the time of the accident and Jamie's falling from the bed. Buck also argues that Boozer and Girl Scouts failed to properly supervise Jamie and the other minor children by not requiring the children to sleep on the bottom bunks, or at least, on bunk beds with side rail protectors.[3]
¶ 10. "In this negligence action, [Buck] bears the burden of producing evidence sufficient to establish the existence of [a] duty, breach, proximate causation, and damages." Simpson v. Boyd, 880 So.2d 1047, 1050(¶ 12) (Miss.2004) (citing Palmer v. Anderson Infirmary Benevolent Ass'n, 656 So.2d 790, 794 (Miss.1995)).
¶ 11. At the conclusion of the motion hearing, the trial judge found that Buck did not produce any evidence to indicate negligence by Boozer or Girl Scouts. We agree with the trial judge's findings. However, assuming arguendo that Boozer was negligent in leaving the troop with the assistant troop leader, Buck has failed to demonstrate how Boozer's absence contributed to Jamie's injuries.
¶ 12. Similarly, Buck has presented no authority that would substantiate her claim that the troop should not have been allowed to sleep on the beds without guard rails, or at least should have been made to sleep on the bottom bunks. Therefore, this argument is without merit.

(3) Dangerous Instrumentality
¶ 13. Buck's next allegation of error concerns the trial judge's failure to find that a bunk bed constituted a dangerous instrumentality. The trial judge, relying on the New York case of Rubin v. Olympic Resort, Inc., 24 Misc.2d 131, 198 N.Y.S.2d 408 (1960), coupled with Buck's lack of proof, found no merit in Buck's contention that a bunk bed is a dangerous instrumentality. In Rubin, a six-year-old child was vacationing with her family at a hotel when she fell out of the top bunk and was injured. Id. at 409. The bunk bed had no guard rails. Id. Although the court denied the child's parents recovery on other grounds, it commented that:
This Court is not prepared to state that a bunk bed without a guard rail is a dangerous instrumentality in and of itself. Such a bed, even with a guard rail, might be very dangerous to a child six months of age. Without a guard rail such a bed may be entirely safe for a child of fourteen years. It is for the parents of the child to determine what equipment is necessary or suitable for their own children. The hotel keeper cannot be presumed to know.
Id. at 409-10.
¶ 14. We, like the trial judge and the Rubin court, are not prepared to say that a bunk bed being used by a thirteen-year old without guard rails is a dangerous instrumentality. As noted by Camp Wilkes, Buck has failed to show any defect in the design of the bed or offered any evidence that the bed failed to comply with applicable standards, regulations, or guidelines. Buck even testified in a deposition that she knew what type bed her daughter was sleeping on and that she had no concerns about her daughter sleeping on the top bunk. Buck further stated that she did not inform anyone that she did not want her daughter sleeping on the top *782 bunk. For the forgoing reasons, we find this issue to be without merit.
¶ 15. Buck also argues that Camp Wilkes, by its use of bunk beds, failed to use reasonable care in providing a safe place for Jamie to sleep and also failed to adequately maintain and inspect its premises in a reasonably prudent manner. Buck further contends that Camp Wilkes failed to warn Jamie of a dangerous condition which the camp knew, or should have known, existed on their premises.
¶ 16. Camp Wilkes properly advances that it owed Jamie, as an invitee, the duty of exercising reasonable care to keep its premises safe, or to warn Jamie of any hidden or concealed perils of which it knew, or should have known, in the exercise of reasonable care. Lucas v. Buddy Jones Ford Lincoln Mercury, Inc., 518 So.2d 646, 648 (Miss.1988) (citing Downs v. Corder, 377 So.2d 603, 605 (Miss.1979)). However, Camp Wilkes argues that a bunk bed is an item normally encountered on the business premises of camps like Camp Wilkes and that a bunk bed is not a hidden or concealed peril.
¶ 17. We have already found that a bunk bed is not an inherently dangerous instrumentality. We now find that Buck has failed to demonstrate or show that the bunk bed in question was in any way defective. Therefore, we find no merit in Buck's argument that Camp Wilkes, by its use of bunk beds, failed to use reasonable care in providing a safe place for Jamie to sleep.
¶ 18. Finally, Buck asserts that the Appellees' actions constituted negligence per se because Jamie was less than fourteen years old at the time of the accident. The record reveals that Buck failed to cite any case law in support of this proposition. "[I]ssues cannot be decided based on assertions from the briefs alone." Pulphus v. State, 782 So.2d 1220, 1224 (Miss.2001) (¶ 15) (citing Robinson v. State, 662 So.2d 1100, 1104 (Miss.1995)). Similarly, a failure to cite legal authority in support of a proposition precludes this Court from considering the issue on appeal. Grey v. Grey, 638 So.2d 488, 491 (Miss.1994) (citing Matter of Estate of Mason, 616 So.2d 322, 327 (Miss.1993)).
¶ 19. However, notwithstanding Buck's failure to supply any authority in support of her proposition that allowing a thirteen-year old to sleep in a bunk bed not equipped with guard rails constitutes negligence per se, we refuse to embrace such a proposition. Therefore, we affirm the decision of the trial court granting summary judgment to the Appellees.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. MYERS, J., NOT PARTICIPATING.
NOTES
[1] The camp furnished bunk beds for the girls to sleep on. The beds did not have any guard rails.
[2] The second cabin had a similar layout as the first cabin and also had bunk beds for the girls to sleep on.
[3] Buck argues that the beds were donated by the U.S. Navy, and therefore the beds were designed for adults, not minors.