950 So.2d 231 (2007)
The ESTATE OF Maggie HAZELTON by and through Darlene HESTER, Administratrix of the Estate of Maggie Hazelton, for the Use and Benefit of The Estate of Maggie Hazelton, and for the Use and Benefit of the Wrongful Death Beneficiaries of Maggie Hazelton, Appellant
v.
H. Conner CAIN and Richard L. Smith, Appellees.
No. 2005-CA-01484-COA.
Court of Appeals of Mississippi.
February 27, 2007.
*232 F.M. Turner, attorney for appellant.
Walter William Dukes, Gulfport, attorney for appellees.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
*233 CHANDLER, J., for the Court.
¶ 1. Darlene Hester, Maggie Hazelton's representative, appeals from a summary judgment granted in favor of the defendants in a civil action for personal injuries and wrongful death allegedly resulting from negligent care and treatment rendered to the decedent, Hazelton, while she was a resident at Driftwood Nursing Center in Gulfport, Mississippi.
¶ 2. Hester brought suit against Connor Cain, president and controlling shareholder of Driftwood, and Richard Smith, former administrator of Driftwood, alleging negligence, medical malpractice, fraud, and wrongful death. Cain and Smith each filed motions for summary judgment. The Harrison County Circuit Court granted both motions, finding that no genuine issue of material fact existed and that the defendants were entitled to a judgment as a matter of law. Hester appeals, arguing:
I. WHETHER A GENUINE ISSUE OF MATERIAL FACT EXISTS TO RENDER SUMMARY JUDGMENT IMPROPER.
¶ 3. Finding no error in the lower court's decision, we affirm.

FACTS
¶ 4. Maggie Hazelton was admitted to Driftwood Nursing Center in Gulfport, Mississippi on April 9, 1999, at the age of eighty-three. She remained a resident of Driftwood until May 30, 1999, when she was discharged. In June of 1999, Hazelton was readmitted and then discharged again on August 11, 1999. Hazelton passed away the next day, on August 12th, while a patient at Memorial Hospital in Gulfport.
¶ 5. On July 27, 2001, Darlene Hester filed a civil action against Driftwood Nursing Center, H. Conner Cain and Richard L. Smith for personal injuries and the wrongful death of Hazelton resulting from alleged negligent care and treatment she received while a resident of Driftwood. Cain was sued in his capacity as the licensee and president of Driftwood and Smith as the administrator of the nursing home. Smith was employed as administrator of the facility upon Hazelton's initial admission, but he resigned as administrator on June 15, 1999. Smith was not the administrator during the last two months of Hazelton's residency.
¶ 6. Hester claims that Hazelton was the victim of a pattern and practice of neglect. As a result, Hazelton suffered pneumonia, falls, unexplained injuries, bone fractures, urinary and kidney infections, weight loss, pressure sores, poor hygiene, sepsis and ultimately death. Hester asserts that Driftwood's negligent conduct caused Hazelton to lose her personal dignity and caused her death to be preceded by extreme and unnecessary pain, degradation, anguish, unnecessary hospitalizations, disfigurement and emotional trauma.
¶ 7. In her initial complaint, Hester alleged that Smith and Cain breached their duty of reasonable care by failing to provide a minimum number of staff necessary to assist the residents, to provide adequate supervision, to respond to serious symptoms Hazelton exhibited, to develop and implement an appropriate residential care plan, and to maintain current records of the residents, and other forms of negligent care. Hester also maintained that Cain and Smith committed fraud by misrepresenting to her that the home was able to provide twenty-four hour a day supervision and care, and that Driftwood employed an adequate amount of staff who were properly trained.
¶ 8. On appeal, Hester raises a more generalized allegation, claiming that Cain and Smith had a legal duty of care pursuant *234 to the guidelines established for nursing homes in the state statutes and legislative regulations. Further, Hester asserts that Cain and Smith are liable because they either knew or should have known of the alleged tortious conduct exhibited against Hazleton, and should have taken steps to prevent it.
¶ 9. On March 24, 2003, Cain and Smith filed their respective motions for summary judgment, arguing that Hester failed to provide sufficient evidence to prove a genuine issue of material fact pertaining to the elements of negligence and that they were entitled to a judgment as a matter of law.
¶ 10. On November 7, 2005, the lower court granted both summary judgment orders, and thereafter entered final judgments of dismissal for both Smith and Cain, as well as a dismissal without prejudice in favor of Driftwood. In the order, Driftwood agreed to waive any statute of limitation defense should Hester bring a subsequent action relating to the same claims asserted in the present action. Hester, therefore, perfected her appeal solely as to Cain and Smith.

STANDARD OF REVIEW
¶ 11. This Court reviews the record de novo to determine whether a motion for summary judgment was properly granted. Lowery v. Guaranty Bank and Trust Co., 592 So.2d 79, 81 (Miss.1991). A motion for summary judgment should be granted if it can be shown by the evidence that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. M.R.C.P. 56(c). On a motion for summary judgment, a court does not try issues of fact; it can only determine whether there are issues to be tried. Hartford Cas. Ins. Co. v. Halliburton Co., 826 So.2d 1206, 1209-10(¶ 6) (Miss.2001). All evidence must be viewed in the light most favorable to the non-movant, and the court should presume that all evidence in the non-movant's favor is true. Daniels v. GNB, Inc., 629 So.2d 595, 599 (Miss.1993).

LAW AND ANALYSIS
¶ 12. The question before us is whether a genuine issue of fact exists to establish personal liability against Driftwood's licensee and administrator. We hold that summary judgment was proper because the record demonstrates insufficient evidence to withstand the motion.
¶ 13. In a negligence action, the plaintiff bears the burden of producing sufficient evidence to establish the existence of the conventional tort elements of duty, breach of duty, proximate causation, and injury. Bailey v. Wheatley Estates Corp., 829 So.2d 1278, 1282(¶ 17) (Miss.Ct. App.2002). Hester argues that a genuine issue of material fact exists as to whether Cain and Smith had a legal duty pursuant to the statutes and regulations for nursing homes, and also as to whether Cain and Smith breached that alleged duty. Hester maintains that Cain, as licensee for Driftwood, and Smith, as administrator, either knew or should have known of the alleged negligence against Hazelton, and that both men should have objected to the conduct or taken steps to prevent it. Cain and Smith argue that because they did not have direct involvement in any alleged tort, they are not liable. Miss. Printing Co. v. Maris, West & Baker, Inc., 492 So.2d 977, 978 (Miss.1986).
A. Duty
¶ 14. Hester asserts that Cain and Smith owed a legal duty to Hazelton under Mississippi Code Annotated Sections 43-11-1 to -13 (Rev.2004) and the State's internal nursing home regulations. Section 43-11-13 authorizes the Mississippi State Department of Health to grant and *235 revoke licenses for institutions assisting the aged and infirm. Miss.Code Ann. § 43-11-13. The rules, regulations and standards governing nursing homes are recorded in the Department of Health's Rules, Regulations and Minimum Standards for Institutions for the Aged or Infirm.
¶ 15. Hester argues that because a license is personal to a licensee, the licensee is therefore personally responsible for compliance with the rules and regulations and "shall be the person who [sic] the Department . . . will hold responsible for the operation of the home in compliance with these regulations." Miss. Dept. of Health, Rules, Regulations, and Minimum Standard for Institutions for the Aged or Infirm, Rule 402.1 (1999). Likewise, the administrator must also hold a separate license which requires that he or she have the "authority and responsibility for the operation of the institution in all its administrative and professional functions." Id., Rule 403.1.
¶ 16. Violation of a statute, regulation, or ordinance may support a cause of action for negligence per se where (1) the plaintiff is within the class protected, and (2) the harm sustained is the type sought to be prevented. Palmer v. Anderson Infirmary Benevolent Ass'n., 656 So.2d 790, 795 (Miss.1995) (citing Boyer v. Tenn. Tom Constructors, 702 F.2d 609, 611 (5th Cir. 1983)). Section H, Rule No. 408.1 of the Minimum Standards states that a patient "has a right of action for damages or other relief for deprivations of infringements of his right to adequate and proper treatment and care established by an applicable statute, rule, regulation or contract. . . ."
¶ 17. Although the statutes state that the purpose of section 43-11-1 is to establish standards to protect individuals in aged or infirm institutions, the record does not provide evidence to support the second prong required to find negligence per se. Hester merely makes general assertions that Hazelton suffered certain injuries, but no affidavit or substantive evidence is shown to either prove the alleged harm or to demonstrate a causal link between Cain and Smith to Hazelton. Likewise, no evidence was shown that Cain or Smith authorized or negligently failed to remedy alleged misconduct by subordinates.
¶ 18. Our supreme court held in Moore v. Mem'l Hosp., 825 So.2d 658, 665(¶ 24) (Miss.2002), that alleged violations of internal regulations do not give rise to an independent cause of action for damages and that although a violation of a regulation may serve as evidence of negligence, it does not, by itself, create a separate cause of action. While Moore focused on the State Board of Pharmacy's internal regulations, we find the holding to be applicable to the present case. In Moore, the mother of a child who was born with deformities as the result of medication taken by the mother during pregnancy sued the pharmacy which filled the prescription. The woman argued that the pharmacy was negligent by selling a drug which was contraindicated for pregnant women. She claimed that the state Board of Pharmacy's regulations created a legal duty for the pharmacy. Upon review of the state board's regulations, the court did not find any language which established a legal duty of care to be applied in a civil action. Id.
¶ 19. Similar to Moore, we find no language in the nursing homes statutes or regulations to expressly create a legal duty for licensees or administrators. As stated above, Sections 43-11-1 to -13 sets forth statutory requirements for nursing homes in Mississippi. No language is included which creates a specific legal duty for either a licensee or an administrator. According to the Minimum Standards, receiving *236 a license for the nursing home makes the licensee "responsible for the operation of the home in compliance with these regulations," and gives an administrator, "authority and responsibility for the operation of the institution in all its administrative and professional functions." Minimum Standards, Rule 402.1 and 403.1.
¶ 20. Therefore, we must look at relevant case law to determine if a legal duty exists for a nursing home licensee or its administrator. It is well established that a nursing home or its owner may be held liable under general tort law principles for negligence regarding the care of a resident. Lagrone v. Helman, 233 Miss. 654, 662, 103 So.2d 365, 368 (1958) (jury was properly instructed that nursing home had a duty to use reasonable care for the safety of the plaintiff). However, we decline to extend this same duty to a licensee or administrator.
¶ 21. In Turner v. Wilson, 620 So.2d 545, 548 (Miss.1993), our supreme court held that "Mississippi follows the general rule that individual liability of corporate officers or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing." The officer or director must have some sort of direct participation, such as being the "guiding spirit behind the wrongful conduct or the central figure in the challenged corporate activity." Id. Turner further recognized:
A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesced in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it.
Id. at 548-49 (citing 19 C.J.S. Corporations Section 544, p. 175 (1990)). Thus it follows that a corporate director is not personally liable to a third party merely by reason of his corporate status for the torts committed by other personnel. Some showing of direct personal involvement by the corporate officer in a decision or action which is causally related to the plaintiff's injury is required. Id.
¶ 22. Hester fails to provide evidence to show that Cain or Smith directed or authorized any of the alleged conduct towards Hazelton. Cain stated that he was not active in the day to day management of the nursing home and did not directly supervise or control the activities of any employees. Smith also stated that he did not supervise or control the activities of any Driftwood employees or agents whom Hester claims to have harmed Hazelton. Hester did not offer any evidence or testimony to rebut these assertions. Therefore, we find Hester's argument to be without merit.
B. Breach of Duty
¶ 23. Notwithstanding our finding that no separate legal duty exists for Cain or Smith, we will address Hester's assertion of breach of duty. Hester maintains that Cain, as licensee for Driftwood, and Smith, as administrator, were negligent because they either knew or should have known of the alleged negligence against Hazelton, and should have objected to the conduct or taken steps to prevent it. Cain and Smith argue that because they did not have direct involvement in any alleged tort, they are not liable. Miss. Printing Co., 492 So.2d at 978.
*237 ¶ 24. In order to withstand summary judgment, the non-moving party may not rely on general allegations or denials in the pleadings, but "must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." Foster v. Noel, 715 So.2d 174, 180(¶ 35) (Miss.1998). As noted above, Hester did not offer such evidence.
¶ 25. Cain testified that he conducted almost daily "walk-throughs" of the facility and regularly spoke with either Smith or the head of the nursing staff. Cain inquired about dietary concerns and patients who were reported to have pressure sores. No records indicate that Cain was ever made aware of Hazelton's specific condition or that any complaints were filed on Hazelton's behalf. Likewise, Smith asserted that he did not directly supervise or control the activities of any Driftwood employees whom Hester alleges caused Hazelton harm. Smith noted that he was the administrator of Driftwood for only a few months of Hazelton's residency. He resigned as administrator approximately two months before Hazelton passed away. Yet Hester asserts that a corporate officer or agent may be liable for the torts of the corporation or of other directors, officers or agents when he either knew or in the exercise of reasonable care should have known of the tortious conduct and should have taken steps to prevent it. Turner v. Wilson, 620 So.2d 545, 548-49 (Miss.1993).
¶ 26. Hester relies on surveys and inspections conducted by the Mississippi Department of Health to prove that Cain and Smith should have been aware of the deficiencies, and that the existence of these reports created a sufficient issue of material fact as to Cain's and Smith's neglect of their legal duties. While these reports show that Driftwood was cited in July 1998 and April 1999 as needing to improve a variety of areas, the reports do not establish a causal connection between Cain and Smith and Hazelton's personal care, or that the men negligently handled their duties, or that any perceived problems were not readily corrected by the nursing home. While the surveys include the date on which the violations occurred, they do not include patients' or employees' names involved in the alleged violations.
¶ 27. Further, Hester does not offer any evidence linking the surveys to Hazelton. One of the surveys was conducted almost a year before Hazelton even became a resident of Driftwood. The second survey was conducted in the first few weeks of Hazelton's stay at Driftwood, but does not establish any connection to Hazelton's care. As we stated above, mere allegations of a breach of internal regulations do not establish a cause of action. Therefore, Hester's argument is without merit.
¶ 28. We find the evidence was insufficient to establish a genuine issue of material fact as to a licensee's or administrator's legal duty or that Cain and Smith breached any such duty. Therefore, we find it unnecessary to discuss the remaining elements of proximate cause and damages. Accordingly, we affirm the lower court's granting of the motion for summary judgment.
¶ 29. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.