KITCHENS, Justice,
Concurring:
¶ 21. Today’s decision marks the sad end of a sad case. Given the obligations imposed upon us by this Court’s previous decision in this case, I am compelled to join today’s pronouncement in its entirety. I write separately, however, to express my strong reservations.
¶ 22. When this case first visited this Court nearly five years ago, the majority concluded that Julie Mabus had put forth no evidence to suggest that she depended upon Jerry McBride in his role as her priest. Mabus v. St. James Episcopal Church, 884 So.2d 747 (Miss.2004) (Mabus I). With respect, I am convinced that this finding was erroneous.
¶ 23. The relationship between priest and parishioner carries depths of trust that cannot be overstated; and viewed in the light most favorable to Ms. Mabus, *268 Neely v. North Mississippi Medical Center, Inc., 996 So.2d 726, 728 (Miss.2008), the record supplied ample evidence to contradict the Court’s 2004 conclusion that “Julie was not dependent upon McBride, nor [did] she repose[ ] any trust or confidence in him_” Mabus I, 884 So.2d at 759. During their surreptitiously recorded colloquy, McBride repeatedly referred to his longstanding status as Julie’s priest to encourage her comfort and trust. See, e.g., id. at 759-60 (“McBride: ... [T]his is not an ambush on my part, I’m here because I love you, I didn’t want to be here.”). Julie’s continued presence at the meeting was in and of itself evidence that McBride’s overtures persuaded her. Had I been a member of the Court when it addressed this case in 2004, I would have voted to submit to a jury the questions of fact as to whether the priest-penitent relationship was operative at that time and whether it was breached by McBride.
¶24. Similarly, if this case’s return to our chambers presented an opportunity to reverse this Court’s 2004 decision, I would vote to do so. But of Ms. Mabus’s seven original claims against McBride, St. James, and the Diocese of Mississippi, only one survived our 2004 judgment. And although I strongly disagree with the Mabus I Court’s conclusion that McBride, as a matter of law, did not act as Ms. Mabus’s priest during the 1998 tape-recorded meeting, I am duty-bound by the law-of-the-case doctrine to apply Mabus I to the fragment that remains today. Therefore, forced as we are by Mabus I to view McBride not as a clergyman but rather as we would any other man on the street, I am prevented from finding, with regard to Ms. Mabus’s only remaining claim, that McBride acted under an affirmative duty to disclose that this ostensibly confidential conversation was being recorded secretly.
¶ 25. Uncomfortable though I am in this final result, my greater fear is that these two decisions will leave Mississippians reticent to divulge their deepest secrets to men and women of the cloth, for fear that the priest-penitent privilege affords no real protection of confidentiality. I do hold out hope that such will not come to pass; for although this case provides a poor example, the central holding of Ma-bus I is one under which Mississippians can take refuge. At its core, Mabus I affirms two important points of law: that a fiduciary relationship can exist between shepherd and sheep, and that the First Amendment does not necessarily preclude court actions for breach of that duty. Id. at 760. Neither of these statements provides a bright-line rule, however. Thus, the determination of whether a cause of action has arisen “is ordinarily a question of fact.” Id. (citing Lowery v. Guar. Bank & Trust Co., 592 So.2d 79, 85 (Miss.1991)). In Julie Mabus’s case, that fact-intensive question rightly belonged to a jury.
¶ 26. Therein lies the ultimate paradox of Mabus I. Although it identified an important legal principle that should afford the protection of confidentiality to the faithful, this Court denied that protection to the person whose misplaced trust in a clergyman first brought that dilemma to this Court’s attention. Because of Mabus I, Mississippians should not fear Julie Ma-bus’s legal fate, but the decision securing that peace of mind denied it to the very woman whose name henceforth will be synonymous with that protection.
¶ 27. I have searched for a way to avoid that irony in this case; but given our earlier determination regarding McBride, I see no other legally viable outcome than the one reached by today’s decision. I believe, though, that, generally speaking, our two decisions in this litigation help to secure Mississippians’ privacy interests. I *269 fervently hope that the misapplication of that protection ends with Julie Mabus.
DICKINSON, J., JOINS THIS OPINION IN PART.